CRAMPTON v DEPARTMENT OF STATE

Docket No. 56074. Argued April 10, 1975 (Calendar No. 18).—Decided November 25, 1975. Rehearing denied 396 Mich 956.

Clyde B. Crampton was arrested by a Lansing police officer for driving under the influence of intoxicating liquor. He refused to submit to a chemical test to ascertain the alcohol content of his blood. Thereafter he received from the Secretary of State notice of receipt of a sworn statement of refusal to submit to a chemical test for alcohol. Upon receiving this notice, he requested a hearing before the License Appeal Board pursuant to the statute (MCLA 257.625f; MSA 9.2325[6]). A two-man panel was convened with one member representing the Secretary of State and the other being a police officer from the Lansing Police Department. At the conclusion of the hearing, his driver's license was suspended. Plaintiff Crampton filed for judicial review, and the Ingham Circuit Court, Donald L. Reisig, J., held that the composition of the License Appeal Board violated due process guarantees and ordered plaintiff's driving privileges restored. The Court of Appeals, Quinn, P. J., and V. J. Brennan and Carland, JJ., reversed (Docket No. 17878). Plaintiff appeals. *Held:*

Plaintiff was denied due process of law. Appeal board panels with members who are full-time enforcement officials are not fair and impartial tribunals to adjudge a law enforcement dispute between a citizen and a police officer.

1. An operator's license may not be suspended or revoked without that procedural due process required by the Fourteenth Amendment: a hearing before an unbiased and impartial decisionmaker is a basic requirement of due process.

2. A decisionmaker may be disqualified without a showing of actual bias in situations where experience shows that the probability of actual bias on his part is too high to be constitutionally tolerable.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 7] 7 Am Jur 2d, Automobiles and Highway Traffic § 93 *et seq.*
[3] 16 Am Jur 2d, Constitutional Law §§ 335, 542–547.
[4–6] 46 Am Jur 2d, Judges §§ 166–179.

3. Police officers and prosecutors, as law enforcement officials, are identified with and aligned with the state as the adversary of the citizen who is charged with violation of the law. The risk that they will be unable to step out of their roles as full-time law enforcement officials and into the role of unbiased decision-maker in a law enforcement dispute between a citizen and a police officer presents a probability of unfairness too high to be constitutionally tolerable.

4. Full-time law enforcement officials may not be members of License Appeal Board panels.

Reversed and remanded for reinstatement of license.

54 Mich App 211; 220 NW2d 765 (1974) reversed.

1. CONSTITUTIONAL LAW—DUE PROCESS—ADMINISTRATIVE LAW—DRIV-ER'S LICENSES—APPEAL BOARD—COMPOSITION.

The composition of a driver's license appeal board denied a driver his due process right to a fair and impartial tribunal where members of the board were full-time law enforcement officials sitting to adjudge a law enforcement dispute between a citizen and a police officer.

2. CONSTITUTIONAL LAW—DUE PROCESS—ADMINISTRATIVE LAW—DRIV-ER'S LICENSES.

A driver's license may not be suspended or revoked without that procedural due process required by the Fourteenth Amendment (US Const, Am XIV).

3. CONSTITUTIONAL LAW—DUE PROCESS.

A hearing before an unbiased and impartial decisionmaker is a basic requirement of due process.

4. CONSTITUTIONAL LAW—DUE PROCESS—BIAS OF DECISIONMAKER.

The United States Supreme Court has disqualified judges and decisionmakers on the basis of due process from hearing cases without a showing of actual bias in situations where experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.

5. CONSTITUTIONAL LAW—DUE PROCESS—BIAS OF DECISIONMAKER.

A judge or decisionmaker is disqualified on the basis of due process from hearing a case without a showing of actual bias where the judge or decisionmaker (1) has a pecuniary interest in the outcome of the case, (2) has been the target of personal abuse or criticism from the party before him, (3) is enmeshed in other matters involving the parties, or (4) might have pre-

judged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker.

6. CONSTITUTIONAL LAW—DUE PROCESS—BIAS OF DECISIONMAKER— LAW ENFORCEMENT OFFICIALS.

It is impermissible for officials who are entrusted with responsibility for arrest and prosecution of law violators to sit as adjudicators in a law enforcement dispute between a citizen and a police officer; the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.

7. ADMINISTRATIVE LAW—DRIVER'S LICENSES—APPEAL BOARD—COMPO- SITION—CONSTITUTIONAL LAW—DUE PROCESS.

Full-time law enforcement officials may not be members of driver's license appeal boards; the risk that police officers and prosecuting attorneys will be unable to step out of their roles as law enforcement officials and into the role of unbiased decisionmaker in a law enforcement dispute between a citizen and a police officer presents a probability of unfairness too high to be constitutionally tolerable.

*Church, Wyble, Kritselis & Tesseris,* by *Thomas H. Hay,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John D. Pirich,* Assistant Attorney General, for defendants.

LEVIN, J. Clyde Crampton was arrested for driving while under the influence of intoxicating liquor.[1] Under the implied consent law, if a person in that circumstance refuses to submit to a chemical test to determine the alcohol content of his blood his driver's license shall be suspended or revoked.[2]

Crampton refused to submit to a chemical test. Upon notice by the Secretary of State, he exercised his right to a hearing before the License

[1] MCLA 257.625; MSA 9.2325.

[2] MCLA 257.625c; MSA 9.2325(3); MCLA 257.625a(4); MSA 9.2325(1)(4); MCLA 257.625f; MSA 9.2325(6).

Appeal Board. A two-member[3] board, composed of a police officer from the Lansing Police Department and a representative of the Secretary of State, convened and denied Crampton's appeal.

The circuit court held that the composition of the board denied Crampton's due process right to a hearing before a fair and impartial tribunal and ordered that his operator's license be restored. The Court of Appeals reversed holding that Crampton had failed to establish actual bias. 54 Mich App 211; 220 NW2d 765 (1974).

We reverse the Court of Appeals and remand to the circuit court for entry of an order restoring Crampton's operator's license.

While the Lansing Police Department is not a party to this license revocation proceeding, the factual dispute before the License Appeal Board arises out of testimony of a Lansing police officer that Crampton was arrested for driving while intoxicated, advised of his rights, and unreasonably refused to submit to a chemical test.[4]

Crampton was denied due process of law.[5] Appeal board panels which are membered by full-time law enforcement officials are not fair and impartial tribunals to adjudge a law enforcement dispute between a citizen and a police officer.

I

The United States Supreme Court has held that an operator's license may not be suspended or

---

[3] The act provides that the License Appeal Board shall be composed of the Secretary of State, the Attorney General, and the Sheriff/Chief of Police of the county/city where the petitioner resides, or their representatives. It further provides that two members constitute a quorum. MCLA 257.625f(2); MSA 9.2325(6)(2); MCLA 257.322; MSA 9.2022.

[4] MCLA 257.625f; MSA 9.2325(6).

[5] US Const, Am XIV; Const 1963, art 1, § 17.

revoked "without that procedural due process required by the Fourteenth Amendment".[6]

A hearing before an unbiased and impartial decisionmaker is a basic requirement of due process.[7]

The United States Supreme Court has disqualified judges and decisionmakers without a showing of actual bias in situations where "experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable".[8] Among the situations identified by the Court as presenting that risk are where the judge or decisionmaker

(1) has a pecuniary interest in the outcome;[9]

(2) "has been the target of personal abuse or criticism from the party before him";[10]

(3) is "enmeshed in [other] matters involving petitioner * * * ";[11] or

(4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker.[12]

(1) *Pecuniary Interest*

In *Tumey v Ohio,* 273 US 510; 47 S Ct 437; 71 L Ed 749; 50 ALR 1243 (1927), the Court held that

---

[6] *Bell v Burson,* 402 US 535, 539; 91 S Ct 1586; 29 L Ed 2d 90, 94 (1971).

[7] *In re Murchison,* 349 US 133, 136; 75 S Ct 623; 99 L Ed 942 (1955); *Gibson v Berryhill,* 411 US 564, 579; 93 S Ct 1689; 36 L Ed 2d 488 (1973); *Tumey v Ohio,* 273 US 510; 47 S Ct 437; 71 L Ed 749; 50 ALR 1243 (1927).

[8] *Withrow v Larkin,* 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712, 723 (1975).

[9] *Ward v Monroeville,* 409 US 57, 60; 93 S Ct 80; 34 L Ed 2d 267 (1972); *Tumey v Ohio, supra; Gibson v Berryhill, supra.*

[10] *Withrow v Larkin, supra,* p 47, n 15.

[11] *Johnson v Mississippi,* 403 US 212, 215; 91 S Ct 1778; 29 L Ed 2d 423, 427 (1971).

[12] *In re Murchison, supra; Goldberg v Kelly,* 397 US 254, 271; 90 S Ct 1011; 25 L Ed 2d 287 (1970); *Morrissey v Brewer,* 408 US 471, 485–486; 92 S Ct 2593; 33 L Ed 2d 484, 497 (1972).

the village mayor could not sit as judge on "the liquor court" where he was directly compensated out of fines collected for violation of the state prohibition act.

Even though the Mayor in *Ward v Monroeville,* 409 US 57, 60; 93 S Ct 80; 34 L Ed 2d 267 (1972), was not personally compensated out of traffic fines, the Court held that because he was responsible for village finances he could not fairly adjudicate and impose fines for traffic offenses. Such responsibility might "make him partisan to maintain the high level of contribution from the mayor's court".

In *Gibson v Berryhill,* 411 US 564; 93 S Ct 1689; 36 L Ed 2d 488 (1973), the Court concluded that a board of optometry, composed of members of an optometric association which excluded from membership salaried optometrists employed by other persons or entities, had a pecuniary interest in the outcome of proceedings brought against optometrists for unethical conduct in practicing as employees of a business organization. Nearly half of the optometrists practicing in the state were salaried employees of business corporations. If the effort to revoke the licenses of salaried optometrists succeeded, the optometrists engaged in private practice would realize an increase in business.

(2) *Personal Abuse*

In *Mayberry v Pennsylvania,* 400 US 455, 465; 91 S Ct 499; 27 L Ed 2d 532, 540 (1971), the Court held that where a trial judge had been insulted, slandered and vilified during trial by a defendant representing himself he could not adjudicate post-judgment contempt proceedings against the defendant. The Court found that while the judge "was not an activist seeking combat", he had become "embroiled in a running, bitter controversy" and was not "likely to maintain that calm detachment necessary for fair adjudication".

(3) *Enmeshed in Other Matters Involving a Litigant*

Where a judge was recently a losing party in a civil rights suit brought by the person who is now the defendant in a criminal contempt proceeding, it is not appropriate for him to adjudicate the contempt charges. "Trial before 'an unbiased judge' is essential to due process." *Johnson v Mississippi,* 403 US 212, 215–216; 91 S Ct 1778; 29 L Ed 2d 423, 427 (1971).

(4) *Prejudged Case because of Prior Involvement*

The Court held in *In re Murchison,* 349 US 133; 75 S Ct 623; 99 L Ed 942 (1955), that a Michigan one-man grand juror could not try for contempt witnesses who had appeared before him and whom he had charged with perjury and refusal to answer questions.

In *Goldberg v Kelly,* 397 US 254, 271; 90 S Ct 1011; 25 L Ed 2d 287 (1970), the Court held that procedural due process required that welfare recipients be afforded an evidentiary hearing before termination of benefits and declared that "of course, an impartial decision maker is essential". "[P]rior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker. He should not, however, have participated in making the determination under review."

In *Morrissey v Brewer,* 408 US 471, 485, 489; 92 S Ct 2593; 33 L Ed 2d 484, 497 (1972), the Supreme Court held that a parolee is entitled to a hearing before a "neutral and detached" board before his parole is revoked and to a preliminary determination that there is probable cause to hold him pending that hearing. The preliminary determination "that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case".

Most recently, in *Withrow v Larkin,* 421 US 35; 95 S Ct 1456; 43 L Ed 2d 712 (1975), the Court, distinguishing *Murchison,*[13] *Goldberg* and *Morrissey,* eschewed a flat rule that prior involvement of a tribunal as accuser, investigator or prosecutor necessarily precludes participation as adjudicator.

The individual adjudicators disqualified for partiality in *Murchison, Goldberg* and *Morrissey* had personally conducted the initial investigation, amassed evidence, and filed and prosecuted the charges.

In *Withrow,* a state examining board, composed of practicing physicians, first investigates and issues findings and conclusions regarding probable cause to believe a physician has violated statutes regulating the practice of medicine and then determines whether in fact the statutes have been violated. The Court concluded that "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation * * * ".[14] The Court said that this does not preclude a determination "from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high".[15]

The Court said that *Morrissey* "held that when *review* of an initial decision is mandated, the decisionmaker must be other than the one who made the decision under review" and indicated that *Goldberg* was a similar case.[16] (Emphasis supplied.)

---

[13] The procedure in *Murchison* was "a denial of due process of law not only because the judge in effect became part of the prosecution and assumed an adversary position, but also because as a judge, passing on guilt or innocence, he very likely relied on 'his own personal knowledge and impression of what had occurred in the grand jury room,' an impression that 'could not be tested by adequate cross-examination' ". *Withrow v Larkin, supra,* p 53.

[14] *Withrow v Larkin, supra,* p 58.

[15] *Withrow v Larkin, supra,* p 58.

[16] *Withrow v Larkin, supra,* p 58, n 25.

In contrast, in *Withrow* the examining board does not review its initial decision, it addresses two separate questions. First it decides on a preliminary showing whether there is probable cause to believe the statute has been violated and then after a full evidentiary hearing it decides whether there has in fact been a violation of the statute.

The *Withrow* Court cautioned, however, that a substantial due process question would be raised if "the initial view of the facts based on the evidence derived from nonadversarial processes as a practical or legal matter foreclosed fair and effective consideration at a subsequent adversary hearing leading to ultimate decision * * * ".[17]

## II

The implied consent law provides that the License Appeal Board shall be composed of the Secretary of State, the Attorney General, and the Sheriff/Chief of Police of the county/city where the petitioner resides, or their representatives.[18]

It is not contended that members of a License Appeal Board panel have any pecuniary interest in the outcome of license revocation proceedings.[19] They do not themselves initiate such proceedings nor do they sit in review of their own decision.

It is not contended that the members of the panel had ever been criticized or ridiculed by Crampton or enmeshed in other matters concerning him.

Crampton's position is that he was deprived of due process of law by being forced to submit his case to a tribunal of which his adversary—the

---

[17] *Withrow v Larkin, supra,* p 58.

[18] MCLA 257.322; MSA 9.2022.

[19] MCLA 257.322; MSA 9.2022. .

Lansing Police Department—was a member.[20] Additionally, he argues that participation of the Attorney General or his representative renders a panel constitutionally defective for the same reason.

We conclude that it is impermissible for officials who are entrusted with responsibility for arrest and prosecution of law violators to sit as adjudicators in a law enforcement dispute between a citizen and a police officer. In this situation, as in those previously identified by the United States Supreme Court, the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.

Crampton was arrested by a member of the Lansing Police Department. The officer asserted that he advised Crampton of his rights and Crampton refused to submit to a chemical test. The officer filed a sworn report alleging that Crampton's refusal to submit was unreasonable.[21] Pursuant to the implied consent law, another Lansing police officer, representing the Chief of Police, sat on the License Appeal Board to determine the statutory issues whether his fellow police officer had (1) reasonable grounds to believe Crampton was driving while under the influence of intoxicating liquor, (2) placed him under arrest while he was in that condition, (3) advised him of his rights, and (4) requested that he submit to a chemical test and, if so, whether he reasonably refused to sub-

---

[20] Crampton cites *Glass v State Highway Commissioner,* 370 Mich 482; 122 NW2d 651 (1963).

The question in *Glass* was whether an employee of the State Highway Department could fairly conduct a hearing and decide on the necessity for taking a particular parcel of property for state highway purposes.

While *Glass* might be distinguished from this case, it does highlight the problem of predisposition to decide against the citizen because of affiliation or identification with the state.

[21] MCLA 257.625f(2); MSA 9.2325(6)(2).

mit to a test.[22] Resolution of those factual issues will often turn on appraisal of the credibility of the opposing testimony of the officer and the citizen.

Police officers are full-time law enforcement officials trained to ferret out crime and arrest citizens who have violated the law.

Similarly, the Attorney General and prosecuting attorneys are responsible for prosecution of citizens charged with violation of the law. Prosecuting attorneys and their assistants have been designated to represent the Attorney General on License Appeal Boards although they or others in their office are prosecuting the person whose appeal they are hearing for a drunk driving offense arising out of the incident which prompted the revocation hearing. Crampton was prosecuted and, subsequent to this license revocation hearing, was convicted of a drunk driving offense.[23]

We do not suggest that police officers and prosecutors are not fair-minded. But they are deeply and personally involved in the fight against law violators. As law enforcement officials they are identified and aligned with the state as the adversary of the citizen who is charged with violation of the law. Their function and frame of reference may be expected to make them "partisan to maintain"[24] their own authority and that of their fellow officers. The risk that they will be unable to step out of their roles as full-time law enforcement officials and into the role of unbiased decisionmaker in a law enforcement dispute between a

---

[22] MCLA 257.625f; MSA 9.2325(6).

[23] The complaint and warrant were issued on November 18, 1972, the day after the drunk driving offense was alleged to have been committed. The license revocation hearing was held January 18, 1973. Crampton was convicted November 20, 1973 of driving while impaired.

[24] *Ward v Monroeville, supra,* p 60.

citizen[25] and a police officer presents a probability of unfairness too high to be constitutionally tolerable.

We hold that the composition of the License Appeal Board denied Crampton his due process right to a hearing before a fair and impartial tribunal. Full-time law enforcement officials may not be members of License Appeal Board panels.

We reverse and remand this case for entry of an order restoring Crampton's operator's license.

T. G. KAVANAGH, C. J., and WILLIAMS, COLEMAN, and FITZGERALD, JJ., concurred with LEVIN, J.

LINDEMER, J., took no part in the decision of this case.

---

[25] Contrast *Sponick v Detroit Police Department,* 49 Mich App 162, 186; 211 NW2d 674 (1973), where a trial board composed exclusively of police officers sat in judgment of a charge of misconduct prosecuted against a fellow officer by the department.