BAY COUNTY CONCEALED WEAPONS LICENSING BOARD v
GASTA

Docket No. 78-4906. Submitted January 4, 1980, at Lansing.—Decided
April 22, 1980.

James G. Gasta was convicted of intentionally pointing a firearm
at another person. He had a permit to carry a concealed
weapon in his employment which had been issued by the
county concealed weapons licensing board. A complaint was
filed with the licensing board for revocation of Gasta's con-
cealed weapons permit. The complaint alleged that Gasta had
intentionally pointed his firearm at two teenagers without
malice. A hearing was held and the licensing board ordered
revocation of defendant's permit. A petition for review of this
order was granted in Ingham Circuit Court. Venue was trans-
ferred to Bay Circuit Court. Bay County was the residence of
the licensing board and where the revocation of the permit was
made. Bay Circuit Court, John X. Theiler, J., in answer to
defendant's challenge to the composition of the licensing board
composed of the prosecuting attorney, sheriff and commissioner
of state police, or their respective authorized deputies, ruled
that the presence of full-time law enforcement officials on
concealed weapons licensing boards created an intolerably high
risk of bias against licensees in revocation hearings, thus
violating due process rights in such hearings. The licensing
board's revocation order was reversed. Plaintiff appeals. The
issue on appeal is whether defendant was denied procedural
due process in the license revocation proceedings. *Held:*

In view of the inherent potential danger which accompanies
the issuance of a permit to carry a concealed weapon, the
licensing board, composed of a prosecuting attorney, sheriff,

REFERENCES FOR POINTS IN HEADNOTES
[1, 6] 79 Am Jur 2d, Weapons and Firearms § 4.
[2, 5, 6] 79 Am Jur 2d, Weapons and Firearms §§ 14, 31.
Who is entitled to permit to carry concealed weapons. 51 ALR3d
504.
[3] 79 Am Jur 2d, Weapons and Firearms §§ 14, 31.
[4] 51 Am Jur 2d, Licenses and Permits § 58 *et seq.*
79 Am Jur 2d, Weapons and Firearms § 14.

and commissioner of the Michigan State Police, or their respective authorized deputies, reflects the Legislature's intent that power to issue and revoke concealed weapons licenses is properly placed with those professionals most able to assess community needs and problems in this area.

Reversed.

1. WEAPONS — CONCEALED WEAPONS — REGULATORY AGENCY — CONSTITUTIONAL LAW — RIGHT TO BEAR ARMS — POLICE POWER.

The existence of a concealed weapons licensing board reflects a state's legitimate interest in limiting public access to weapons suitable for criminal purposes and confirms the notion that the constitutionally guaranteed right to bear arms is subject to a reasonable exercise of police power.

2. WEAPONS — CONCEALED WEAPONS — APPLICATIONS AND PERMITS — QUALIFICATIONS OF APPLICANT — STATUTES.

An applicant for a permit to carry a concealed weapon must meet certain age and residency requirements; the application must be approved by a local official; and it must appear that the applicant has good reason to fear injury to the applicant's person or property, or has other proper reasons, and that the applicant is a suitable person to be so licensed (MCL 28.426; MSA 28.93).

3. WEAPONS — CONCEALED WEAPONS — LICENSING BOARD — WEAPONS PERMIT — REVOCATION OF PERMIT — STATUTES.

A county concealed weapons licensing board is composed of three members, the prosecuting attorney, the sheriff and the commissioner of the Michigan State Police, or their respective deputies, who are charged with the exclusive authority to issue to applicants licenses to carry concealed weapons; this three-member licensing board has statutory authority to both issue and revoke a concealed weapons permit (MCL 28.426; MSA 28.93).

4. WEAPONS — CONCEALED WEAPONS — LICENSING BOARD — REVOCATION OF PERMIT — PROCEDURE TO REVOKE — STATUTES.

Procedures for revocation of a concealed weapons permit require that the licensee be notified of the reasons for license revocation; there must be a written complaint to the licensing board alleging a reason for disqualification; there must be a hearing by the board on the complaint and the licensee must receive timely notice of that hearing; witnesses may be placed under oath (MCL 28.428; MSA 28.96).

5. WEAPONS — CONCEALED WEAPONS — LICENSING BOARD — COMPOSI-
    TION OF BOARD — AUTHORITY OF BOARD.

The potential danger which a concealed weapon poses to the
unsuspecting public justifies that licensing procedures be en-
trusted to a board of law enforcement officials; the Legislature
has insured that an individual's perceived need to carry a
concealed weapon will be evaluated in light of the experience
and knowledge of community needs by creating a licensing
board composed of law enforcement officials and by giving this
board the exclusive authority to issue, deny and revoke permits
for concealed weapons.

6. WEAPONS — CONCEALED WEAPONS — REASONS FOR PERMIT —
    TEMPORARY NEED — TIME LIMITATION.

The issuance of a concealed weapons permit is dependent on the
existence of certain facts and circumstances at the time of
issuance which show a temporary need and the permit is issued
only for the limited time those reasons exist.

*Henry J. Sefcovic,* Bay County Civil Counsel, for
plaintiff.

Amicus Curiae: *Judd R. Spray,* Staff Attorney,
Prosecuting Attorneys Association of Michigan.

Before: ALLEN, P.J., and V. J. BRENNAN and
MacKENZIE, JJ.

V. J. BRENNAN, J. The Bay County Concealed
Weapons Licensing Board appeals by right from a
November 6, 1978, Bay County Circuit Court or-
der. That order reversed a September 23, 1977,
order of the Bay County Concealed Weapons Li-
censing Board revoking defendant's permit to
carry a concealed weapon. Relying on *Crampton v
Dep't of State,* 395 Mich 347; 235 NW2d 352
(1975), the Bay County circuit judge ruled that
defendant was denied procedural due process in
the license revocation procedures.

The following brief summary of the facts is

offered simply to describe the context in which the legal issue arose.

Following application to the licensing board on January 7, 1976, and a hearing, Gasta was granted a permit to carry a concealed weapon, limited to use in conjunction with his employment with Jamies Dairies. Proceedings to revoke this permit were initiated following an incident which occurred on August 22, 1977.

There are two versions of this incident. Defendant claims that he returned home from work to discover his son being threatened by two older youths, who had chased the younger Gasta both on foot and by car. Accordingly, defendant pulled the gun he normally carries in his dairy business and held the assailants at bay until police officers arrived.

A conflicting version was given by the investigating officers who reported that defendant's son was one of a group of youngsters throwing fruit at a passing vehicle occupied by two older teenagers, who chased the youngsters. Defendant removed the keys from the ignition of the teenagers' car, and, without contacting the authorities, held the teenagers at gunpoint, made them assume the "spread-eagle" position, and used threatening language.

On August 25, 1977, Mark Berger, one of the Bay County Deputy Sheriffs who had investigated the August 22 incident, signed a complaint against defendant alleging two counts of intentionally pointing a firearm at another person without malice, MCL 750.233; MSA 28.430. Defendant was jury-convicted of one count of the offense charged, and sentenced to a fine of $50, which has been paid.

On September 6, 1977, Deputy Sheriff Berger filed a complaint with the "Licensing Board" for

revocation of defendant's concealed weapons permit. A hearing was held and plaintiff board ordered revocation of defendant's permit on September 23, 1977. On November 15, 1977, defendant filed a petition for review of the licensing board's revocation order in Ingham County Circuit Court, leave to appeal was granted and venue was transferred to Bay County Circuit Court by order dated April 27, 1978. Defendant moved for "peremptory reversal in the nature of a partial summary judgment", challenging the composition of the licensing board on the authority of *Crampton, supra.* The Bay County circuit judge reversed the licensing board's September 23 revocation of defendant's permit to carry a concealed weapon. We disagree with the circuit judge's finding and hereby reverse.

The existence of the Concealed Weapons Licensing Board reflects the state's legitimate interest in limiting public access to weapons suitable for criminal purposes and confirms the notion that the constitutionally guaranteed right to bear arms[1] is subject to a reasonable exercise of the police power. *People v McFadden,* 31 Mich App 512; 188 NW2d 141 (1971), *lv den* 385 Mich 771 (1971).

An applicant for a permit to carry a concealed weapon must meet certain age and residency requirements; the application must be approved by a local official; and it must appear "that the applicant has good reason to fear injury to the applicant's person or property, or has other proper reasons, and that the applicant is a suitable person to be so licensed". MCL 28.426; MSA 28.93.

By statute, a county concealed weapons licensing board is composed of three members, "the prosecuting attorney, the sheriff and the commissioner of the Michigan State Police, or their respective

---

[1] US Const, Am II; Const 1963, art 1, § 6.

authorized deputies", who are charged with the exclusive authority to issue to applicants licenses to carry concealed weapons. MCL 28.426; MSA 28.93. This three member licensing board has statutory authority to both issue and revoke a concealed weapon permit:

"The licensing board herein created by section six [6] may revoke any license issued by it upon receiving a certificate of any magistrate showing that such licensee has been convicted of violating any of the provisions of this act, or has been convicted of a felony. Such license may also be revoked whenever in the judgment of said board the reason for granting such license shall have ceased to exist, or whenever said board shall for any reasonable cause determine said licensee to be an unfit person to carry a pistol concealed upon his person. No such license shall be revoked except upon written complaint and then only after a hearing by said board, of which at least seven [7] days' notice shall be given to the licensee either by personal service or by registered mail to his last known address. The clerk of said licensing board is hereby authorized to administer an oath to any person testifying before such board at any such hearing." MCL 28.428; MSA 28.96.

The statutory revocation procedures require that the licensee be notified of the reasons for license revocation. There must be a written complaint to the licensing board alleging a reason for disqualification. There must be a hearing by the board on the complaint and the licensee must receive timely notice of that hearing. Witnesses may be placed under oath.

The licensing board is comprised of one representative each from the County Prosecutor's Office, the State Police, and the County Sheriff's Department. By creating a board composed of law enforcement officials and by giving it the exclusive authority to issue, deny and revoke permits for

concealed weapons, the Legislature has insured that an individual's perceived need to carry a concealed weapon will be evaluated in light of the experience and knowledge of community needs possessed by these local officials. The potential danger which a concealed weapon poses to the unsuspecting public justifies that licensing procedures be entrusted to a board comprised of law enforcement officials.

In the instant case, the trial court below relied on *Crampton v Dep't of State, supra,* in determining the presence of full-time law enforcement officials on concealed weapons licensing boards created an intolerably high risk of bias against licensees in revocation hearings, thus violating a licensee's due process rights in such hearings. Because of the significant differences in the rights affected and the issues decided by the two boards, we decline to extend *Crampton* to the instant case.[2]

Although the earlier distinctions between rights and privileges in terms of defining protected property interests have been rejected by both the Federal and Michigan courts,[3] we continue to look at the nature of the interest claimed to require protection in determining the scope of the procedural safeguards required in a revocation proceeding. While the holder of a permit to carry a concealed weapon has a modicum of interest in that permit,

[2] This Court has unanimously declined to further extend *Crampton v Dep't of State,* 395 Mich 347; 235 NW2d 352 (1975), in subsequent decisions thereto. See *Wolney v Secretary of State,* 77 Mich App 61; 257 NW2d 754 (1977), *lv den* 402 Mich 877 (1978), *In the Matter of Del Rio,* 400 Mich 665; 256 NW2d 727 (1977), *cert den* 434 US 1029; 98 S Ct 759; 54 L Ed 2d 777 (1978), *Golembiowski v Madison Heights Civil Service Comm,* 93 Mich App 137; 286 NW2d 69 (1979), *Automobile Service Councils of Michigan v Secretary of State,* 82 Mich App 574; 267 NW2d 698 (1978), *lv den* 403 Mich 810 (1978).

[3] *Board of Regents of State Colleges v Roth,* 408 US 564; 92 S Ct 2701; 33 L Ed 2d 548 (1972), *Bundo v Walled Lake,* 395 Mich 679; 238 NW2d 154 (1976).

that interest is not equivalent to the interest and correspondingly the procedural safeguards which surround the holder of a liquor license, *Bundo v Walled Lake*, 395 Mich 679; 238 NW2d 154 (1976), a driver's license, *Crampton v Dep't of State, supra,* or one entitled to receipt of welfare benefits, *Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970).

The issuance of a concealed weapons permit is dependent on the existence of certain facts and circumstances at the time of issuance which show a temporary need. The permit is issued only for the limited time those reasons exist. Unlike the holder of a driver's license or a liquor license, the holder of a concealed weapons permit will usually not generate an economic dependence and reliance on the continued existence of the license.

In view of the inherent potential danger which accompanies the issuance of a permit to carry a concealed weapon, the licensing board as composed reflects the Legislature's intent that power to issue and revoke such licenses is properly placed with those professionals most able to assess community needs and problems in this area.

Reversed. The trial court order which reversed the licensing board's revocation of defendant's permit to carry a concealed weapon is hereby reversed.