*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 28, 2022

Plaintiff-Appellee,

v

No. 358985
Oakland Circuit Court
LC No. 2000-170369-FC

CORNELIUS CORTEZ COPELAND,

Defendant-Appellant.

Before: LETICA, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals by leave granted the circuit court chief judge's order affirming the resentencing judge's denial of defendant's judicial disqualification motion.[1] We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2002, this Court affirmed defendant's sentences of life imprisonment without parole for first-degree felony murder, MCL 750.316(1)(b), and two years' imprisonment for possession of a firearm during the commission of a felony, MCL 750.227b.[2] Defendant committed the sentencing offenses when he was 16 years old. The essential facts underlying defendant's convictions were set forth in this Court's previous opinion as follows:

> Defendant's convictions arise from the fatal shooting of the manager at a Kentucky Fried Chicken (KFC) restaurant where defendant was employed in March 1998. The manager fired defendant after he threatened her, but defendant was rehired on March 11, 1998. Although someone else worked defendant's shift that day, defendant remained at the KFC for the entire shift. He was the last person

---

[1] *People v Copeland*, unpublished order of the Court of Appeals, entered November 3, 2021 (Docket No. 358985).

[2] *People v Copeland*, unpublished per curiam opinion of the Court of Appeals, issued July 16, 2002 (Docket No. 228565).

seen with the manager after the KFC closed for the night. The victim was found lying on the floor near the office the next morning. She had been shot once in the back of the head. An open safe in the office was empty. Defendant was arrested in October 1999. After his arrest, defendant was interrogated at the Oakland County Sheriff's Department. He initially denied that he was the perpetrator, but later stated that the manager was shot accidentally while he was moving his gun from a coat pocket to a pants pocket. [*Copeland*, unpub op at 1.]

Following the United States Supreme Court's decisions in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016), defendant became eligible for resentencing. In February 2021, plaintiff filed a notice of intent to seek imposition of a sentence of life without parole for defendant's murder conviction. Later, the parties entered a sentencing agreement providing for a sentence of 33 to 60 years' imprisonment with credit for time served and submitted it to the circuit court for consideration.

At the June 9, 2021 hearing on the sentencing agreement, the parties acknowledged that, if the court rejected their sentencing agreement, it could either affirm defendant's sentence of life without parole after a *Miller* hearing[3] or impose a term-of-years sentence under MCL 769.25a.[4] The parties' agreement specified that the trial court's term-of-years sentence could be "no less than 25 years nor more than 40 years on the minimum" and "no less than 60 years on the maximum."[5]

---

[3] Under MCL 769.25a(4)(b), the prosecution must file a motion for resentencing in all cases in which the prosecution "will be requesting the court to impose a sentence of imprisonment for life without the possibility of parole. A hearing on the motion shall be conducted as provided in [MCL 769.25]." MCL 769.25(6) requires a trial court to hold a hearing and consider the factors listed in *Miller*, 567 US at 477-478, and other criteria relevant to its decision, before sentencing a juvenile homicide offender if the prosecution moves for imposing a life-without-parole sentence.

[4] The parties indicated that they submitted the sentencing agreement made pursuant to *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982). Though *Killebrew* deals with a defendant's ability to contest his or her guilt if a trial court rejects a sentencing agreement contained in a plea bargain, see *id*. at 206-210, the sentencing agreement herein was analogous to a *Killebrew* agreement in that both parties retained the right to proceed to a *Miller* hearing if the court rejected their agreement.

[5] The parties' sentencing agreement erroneously alluded to MCL 769.25, which governs sentencing juveniles who were convicted of homicide *on or after* March 4, 2014, and allows for the imposition of a maximum sentence *not less than* 60 years, indicating that in a case involving a defendant sentenced after March 4, 2014, a resentencing court could impose a maximum sentence exceeding 60 years. Defendant, however, was originally sentenced in 2000. MCL 769.25a governs resentencing juveniles like defendant who were sentenced *before* June 24, 2012. If the prosecuting attorney does not move for resentencing, subpart (4)(c) states that the resentencing court's maximum sentence *shall be* 60 years with a minimum term not less than 25 or more than 40 years.

At the resentencing hearing—held via Zoom videoconference technology—both parties requested that the resentencing court impose an alternative sentence if the court rejected their sentencing agreement. The court declined to do so and explained that if it rejected the sentencing agreement and entered a different sentence, such sentence would be illusory and require vacating later because the court would be required to hold a *Miller* hearing to develop additional relevant facts for consideration before determining defendant's sentence. The court sought the prosecution's and defense counsel's positions regarding the statutory options for resentencing defendant and remarked that the statutory sentencing options included sentencing defendant to a maximum greater than 60 years' imprisonment. Defense counsel clarified that MCL 769.25a permitted only a 60-year maximum, and the court welcomed the correction. Defense counsel argued that the *Miller* factors supported the sentencing agreement's proposed sentence and offered an analysis of the factors' application to defendant's case.

The resentencing court then summarized the factual background and considered the interplay of each of the *Miller* factors in light of the facts as then known, but expressed concern that the sentencing agreement and the statutory 40-year minimum sentence were insufficient under the circumstances. The court reiterated numerous times, however, that it had not made a sentencing decision and could not do so until additional relevant facts were developed at a *Miller* hearing which would guide the court's sentencing decision. The court, therefore, rejected the sentencing agreement, refused to impose an alternative sentence, and advised the parties that it intended to set the matter for a *Miller* hearing.

Eight days later, on June 17, 2021, the prosecution filed an amended notice advising the resentencing court that plaintiff withdrew its motion seeking to reimpose a sentence of life without parole in this matter. The prosecution intended thereby to limit the resentencing court's options to the statutory sentencing range set forth in MCL 769.25a(4)(c), and eliminate the need for a *Miller* hearing.

On June 23, 2021, defendant moved to disqualify the resentencing judge on the ground that the court had predetermined defendant's sentence arguing that the judge already indicated that any statutory term-of-years sentence would be insufficient. Defendant also argued that the judge created an appearance of impropriety through legal incompetence and an inability to properly utilize the videoconference technology. Defendant acknowledged in his motion that, because the prosecution withdrew its intent to seek the imposition of a sentence of life without parole, the court would be limited to imposing a sentence as provided under MCL 769.25a(4)(c). Defendant, however, asserted that the resentencing judge had prejudged the matter and already decided that no sentence under the statute would suffice in defendant's case. Plaintiff opposed the motion explaining that the prosecution no longer sought imposition of a life-without-parole sentence eliminated the need for a *Miller* hearing, and therefore, the resentencing court's sentencing options were limited to the statutory sentencing range set forth in MCL 769.25a(4)(c). Plaintiff also argued that defendant failed to establish that the resentencing judge's conduct warranted disqualification.

After a hearing on the matter, the resentencing judge rejected each of defendant's arguments and denied defendant's motion for disqualification. Defendant appealed the denial of his motion to the circuit court's chief judge who also denied the motion after a hearing on the matter. Defendant now appeals.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a judge's factual findings regarding a motion for disqualification and review de novo the application of the facts to the law. *People v Roscoe*, 303 Mich App 633, 647; 846 NW2d 402 (2014). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *People v Jackson*, 292 Mich App 583, 591; 808 NW2d 541 (2011).

## III. ANALYSIS

Defendant argues that the resentencing judge must be disqualified because he predetermined defendant's sentence and his conduct otherwise created the appearance of impropriety. Defendant argues that the resentencing judge made clear that he would merely impose the maximum sentence allowed under MCL769.25a at a later resentencing hearing. Defendant also argues that the judge created an appearance of impropriety by failing to understand the resentencing law, by viewing the parties at the Zoom videoconference proceeding in speaker mode as opposed to gallery mode, and by occasionally going offscreen during the proceeding. Defendant's arguments lack merit.

MCR 2.003(C) provides the grounds for disqualification of a judge. In relevant part, the rule allows for judicial disqualification if:

> (a) The judge is biased or prejudiced for or against a party or attorney.

> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v [A.T.] Massey [Coal Co, Inc]*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. [MCR 2.003(C)(1)(a) and (b) (third alteration in original).]

The party challenging a judge for bias must overcome the heavy presumption of judicial impartiality, and a judge will not be disqualified absent "actual, personal prejudice" against a party. *People v Wade*, 283 Mich App 462, 470; 771 NW2d 447 (2009). "An exception to this rule requiring a showing of 'actual' prejudice occurs when the trial judge or decisionmaker might have prejudged the case because of a prior participation as an accuser, investigator, factfinder, or initial decisionmaker." *People v Coones*, 216 Mich App 721, 726; 550 NW2d 600 (1996), citing *Crampton v Mich Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975). In relevant part, the Michigan Code of Judicial Conduct states, "A judge must avoid all impropriety and appearance of impropriety" and "[a]t all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary." Code of Judicial Conduct, Canon 2(A) and (B). The "test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *Caperton*, 556 US at 888 (quotation marks and citation omitted). "Disqualification pursuant to the Due Process Clause is only required in the most extreme cases." *In re MKK*, 286 Mich App 546, 567; 781 NW2d 132 (2009) (quotation marks and citation omitted).

-4-

Juvenile homicide offenders may not be sentenced to life imprisonment without parole unless the sentencing court considers the following factors: the defendant's "chronological age and its hallmark features;" the [defendant's] family and home environment "from which he cannot usually extricate himself;" "the circumstances of the homicide offense, including the extent of his participation in the conduct" and the effect of familial and peer pressures; whether the defendant "might have been charged and convicted of a lesser offense if not for incompetencies associated with youth;" and the possibility of rehabilitation. *Miller*, 567 US at 477-479. Unless the prosecution specifically seeks to reimpose a sentence of life without parole for a juvenile homicide offender, the resentencing court may only impose a term-of-years sentence of 25 to 40 years at minimum and 60 years at maximum. MCL 769.25a(4)(c). The prosecution and the defendant, however, may enter a sentencing agreement in which they propose a mutually satisfactory sentence to the resentencing court, which the court may accept if the agreement serves the interests of justice. See *People v Killebrew*, 416 Mich 189, 206-207; 330 NW2d 834 (1982). If the trial court rejects the agreement, the parties retain their respective rights as if no agreement were ever made. *Id*. at 213.

## A. THE JUDGE DID NOT PREJUDGE DEFENDANT'S SENTENCE

Defendant argues that the resentencing judge prejudged defendant's sentence because he stated at the resentencing hearing that 25 years up to 40 to 60 years' imprisonment seemed insufficient, leaving life without parole as the only available option. According to defendant, this indicated that the judge would only provide the maximum statutory sentence at his resentencing, rendering the outcome of the resentencing hearing predetermined. Defendant's contention, however, fails to account for the context in which the resentencing judge made his remarks. Before the hearing, the prosecution gave the court notice that it intended to seek a sentence of life without parole. In the parties' sentencing agreement, the prosecution expressly reserved its right to seek a sentence of life without parole. The resentencing court had discretion to reject the parties' sentencing agreement and if it did so, in light of the prosecution's expressed intent to seek resentencing of defendant to life without parole, the court correctly recognized that it could sentence defendant to remain in prison for his natural life but first had to hold a *Miller* hearing. The record indicates that the resentencing judge clearly expressed this correct legal understanding as a means of articulating its options but not its ultimate decision. The record does not support defendant's claim that the resentencing judge predetermined defendant's sentence.

The record indicates that, despite both parties' specific requests for imposition of an alternative term-of-years sentence if the court rejected their sentencing agreement, the resentencing judge declined to do so and "give anyone false hope" by imposing an "illusory" sentence before "everything that is a constituent to the sentencing proceeding [took] place," including holding a *Miller* hearing that could reveal additional relevant facts that would guide the court regarding what resentence to impose. Recognizing that the option of imposing a life-without-parole sentence remained, the resentencing judge openly advised the parties that the court rejected the sentencing agreement because it insufficiently accounted for the facts of defendant's offense and the nature of the offender as then currently revealed by the record. The resentencing judge properly understood that, because the prosecution indicated its intent to seek imposition of life without parole, the court would have to consider the *Miller* factors and apply them to the facts of this case before resentencing. The resentencing judge, after being urged by defense counsel to consider the *Miller* factors, gave the factors consideration and analyzed them in relation to the

record as it existed at the time of the hearing, as requested to do so by defense counsel, but the court repeatedly indicated that a *Miller* hearing would give the parties an opportunity to add to the record to assist the court in making its ultimate decision.

Defendant's argument lacks merit for a number of reasons. First, defense counsel invited the judge to discuss a potential sentence, initiated the discussion of the *Miller* factors, and urged the judge to improperly render an alternative resentencing decision immediately, without conducting a full *Miller* hearing. By inviting this extended resentencing discussion, defense counsel waived the right to claim the resentencing court erred by offering a preliminary analysis.[6]

Second, "[o]pinions formed by a judge on the basis of facts introduced or events occurring during the course of the current proceedings . . . do not constitute bias or partiality unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Schellenberg v Rochester, Mich Lodge No 2225*, 228 Mich App 20, 39; 577 NW2d 163 (1998). Defendant has neither alleged nor established with any evidence that the resentencing judge harbored deep-seated favoritism or antagonism toward defendant. The record indicates no bias or prejudice against defendant by the resentencing judge. The rejection of the sentencing agreement fell well within the resentencing court's discretionary sentencing authority. Defendant has failed and cannot demonstrate any due-process violation, let alone one so "extreme" as to require judicial disqualification. *In re MKK*, 286 Mich App at 567.

Third, the resentencing judge's statements during the hearing neither indicated that the court predetermined a sentence, nor demonstrated that the court would not impose a sentence within the statutorily defined sentence range if the opportunity arose to do so. The resentencing proceedings simply had not arrived at the point at which the court could consider imposing a sentence under MCL 769.25a(4)(c). It is also noteworthy that at the time of the hearing the prosecution did not revoke its intent to seek life without parole. That step happened only after the court refused to accept the sentencing agreement. The resentencing judge, therefore, could appropriately state that life imprisonment remained a sentencing option.

Further, given the resentencing judge's explicit and repeated refusal to impose a sentence until after a *Miller* hearing, the record does not support defendant's claim that the judge predetermined his sentence. Rather, the resentencing judge expressed a clear understanding of the law and an ability to withhold final judgment until procedures were properly followed and all relevant facts were developed and presented to the court before sentencing defendant. Just as a "decision not to sentence a defendant in conformance with a preliminary evaluation is not an automatic basis for recusal," *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993), neither is rejection of a sentencing agreement automatic grounds for disqualification, see *Killebrew*, 416 Mich at 206-207. Defendant's speculation that the resentencing judge will impose the highest possible sentence at a later resentencing hearing, does not suffice to establish grounds for judicial

---

[6] Because defendant elicited the resentencing judge's consideration of the *Miller* factors, the situation is analogous to an invited error which occurs "when a party's own affirmative conduct directly causes the error." *People v Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003). "Appellate review is precluded because when a party invites the error, he waives his right to seek appellate review, and any error is extinguished." *Id*. (citation omitted).

disqualification. Defendant has failed to prove any actual prejudice that would support judicial disqualification. *Wade*, 283 Mich App at 470.

Moreover, defendant's argument that he need not demonstrate actual prejudice because the resentencing judge acted as a "factfinder or initial decisionmaker" is unpersuasive. While such an exception to the "actual prejudice" rule exists, see *Coones*, 216 Mich App at 726, that exception applies in situations in which the judge served in some type of accusatory or investigatory role before judging the merits of the case, see *Crampton*, 395 Mich at 353-354. The exception is completely inapplicable to a situation in which the judge previously heard the facts in the same case. See *Cobbs*, 443 Mich at 283 ("A judge's candid statement of how a case appears at an early stage of the proceedings does not prevent the judge from deciding the case in a fair and evenhanded manner later, when additional facts become known."); *Coones*, 216 Mich App at 727 (explaining the trial judge "did not participate as the initial factfinder or decisionmaker" merely because he was involved in "pretrial proceedings in the instant criminal case"). Further, sentencing judges often discuss their thoughts regarding the appropriateness of sentencing agreements without requiring disqualification. In this case, the resentencing judge did not preside over defendant's trial or original sentencing. The record indicates that the resentencing judge, when assigned the case and faced with the resentencing responsibility, thoroughly reviewed the record, the current presentence investigation report (PSIR), the victims' statements, defendant's incarceration disciplinary record, and the programs defendant participated in during his incarceration. At the resentencing hearing, the judge expressed a preliminary understanding of defendant's case but reserved a sentencing decision until after the parties had opportunity to develop the record further and present additional evidence relevant to the *Miller* factors and other criteria relevant to the court's sentencing decision.

Because the totality of the resentencing judge's comments at the resentencing hearing belie defendant's claim that the judge predetermined his sentence, the judge properly denied defendant's motion for disqualification. See *Roscoe*, 303 Mich App at 647 (explaining this Court reviews de novo the application of the facts to the relevant law regarding motions for disqualification). The resentencing judge and the chief judge, therefore, did not err by denying defendant's motion to disqualify.

## B. THE JUDGE'S CONDUCT DID NOT RAISE AN APPEARANCE OF IMPROPRIETY

Defendant does not indicate specifically when during the videoconference hearing the resentencing judge went offscreen, for how long, or what happened at the time. Neither defendant nor defense counsel who were able to see the brief offscreen instances raised any objection. There is no way to determine what, if anything, the judge purportedly missed during the proceeding. The record certainly gives no indication that the judge missed any aspect of the proceedings. Moreover, the resentencing judge indicated during the disqualification motion hearing that, although he briefly went offscreen, he remained in attendance giving attention to the proceedings, in the same manner as during an in-person court proceeding.

The record indicates that the resentencing judge listened attentively to the parties' counsel, one of the victims, and defendant who presented his allocution at the hearing, discussed the law with counsel at length, held frequent colloquies with counsel regarding their respective positions and the facts of this case, and commented to the victim's family and defendant after their respective

statements. The record provides no indication that the judge failed to pay close attention at any point during the entire proceeding. Because the sentencing judge's brief offscreen moments do not indicate inattentiveness or any other impropriety during the proceeding, such do not create an appearance of impropriety. *Caperton*, 556 US at 888.

Similarly, we are not persuaded that viewing the parties in the Zoom default active speaker view mode was improper or created an appearance of impropriety. That feature does not exclude participants or necessarily hide nonspeakers' video images but merely switches the large video window to the person currently speaking. The Zoom gallery view differs in that the users' video screens feature all video participants organized generally in equal size window frames throughout the large video window. The record indicates that, during the resentencing, the judge conducted the videoconference in the default active speaker view mode. The record reflects that the judge paid close attention to defendant and his counsel and made sure that they could hear those speaking, be heard when speaking, and otherwise appropriately participate in the proceedings. Neither defendant nor his counsel interposed a single objection to the manner in which the videoconferencing took place. Further, they never requested that the proceedings be conducted in gallery view mode or that it be changed to that mode at any time. When participants were on mute or not visible on screen, the clerk alerted the court and the resentencing judge took steps to rectify the videoconferencing issues.

The record indicates that the judge took seriously defendant's allocution and considered the offense from defendant's perspective. Moreover, defendant never indicated to the court before or during the resentencing proceeding that his waiver of an in-person proceeding was conditioned on viewing the parties or others in attendance in the Zoom gallery view mode. The resentencing judge, therefore, had no reason to be aware of defendant's concerns in this regard if such existed, nor was the judge given any opportunity to rectify the situation. Further, at the hearing on defendant's disqualification motion, the resentencing judge explained his preference for the speaker view mode because it permitted him to see the person speaking up close without the distraction of the gallery view mode which displays all participants at the same time. Defendant has failed to show that viewing the proceedings in speaker mode in any way violated his due-process rights, *In re MKK*, 286 Mich App at 567, or otherwise created a reasonable perception of impropriety, *Caperton*, 556 US at 888. Defendant, therefore, has failed to overcome the presumption of judicial impartiality.

Further, for many of the same reasons discussed previously, the record belies defendant's claim that the resentencing judge lacked legal competency. The judge—not the parties—pointed out the impropriety and futility of imposing a sentence that would only be vacated so that a *Miller* hearing could be conducted to uncover additional facts pertinent to defendant's resentencing. The resentencing judge correctly refused to impose a sentence before the court had an opportunity to consider all that would be necessary for making the ultimate decision. The extended legal colloquies with the prosecution and defense counsel demonstrate the judge's desire to fully comprehend the applicable law and properly apply it in this case. Defendant's contention that the resentencing judge had no understanding of the applicable resentencing law is not supported by

the record which indicates that the judge knew the *Miller* factors and the applicable analytical procedure, as well as, the aspects of MCL 769.25 and MCL 769.25a.[7]

Defendant also claims that the resentencing judge misunderstood the law by stating he could sentence defendant to life without parole. As explained previously, the resentencing judge correctly stated the law applicable at the time of the resentencing hearing in the context of the prosecution's stated intention to seek the imposition of a life-without-parole sentence and the prosecution's express retention of the right to seek such a sentence if the court rejected the sentencing agreement. Further, having rejected the sentencing agreement, the resentencing judge properly refused to impose any sentence before holding a *Miller* hearing—which would be required before imposing a resentence of life without parole.

Defendant's argument that the resentencing judge misunderstood and was hostile toward the *Miller* factors also lacks merit. Rather than expressing hostility toward the factors, the judge merely reflected upon the interrelationship between factors and gave defense counsel an opportunity to explain how other courts applied certain *Miller* factors that appeared to cover similar topics. At the hearing, defense counsel conceded that she did not have a good answer to that question.

Defendant asserts that the resentencing judge misunderstood the *Miller* factors because he relied on an incorrect recitation of the factors contained in the PSIR. Even if correct, this amounted to harmless error because: (1) defense counsel failed to object to or correct any such misstatement in the PSIR, despite objecting to other information in the PSIR; (2) the PSIR's paraphrased version of the factors expressed the substance of the factors;[8] and (3) the resentencing judge declined to conduct a formal *Miller* hearing at the time. The record indicates that the resentencing judge indulged defense counsel and discussed the *Miller* factors to demonstrate the necessity for holding an actual *Miller* hearing at a later date.

Moreover, the record indicates that the resentencing judge engaged in discussion with the prosecution and defense counsel on finer points of the resentencing law, not because of legal incompetence, but rather to ensure the fair and accurate application of the law. Given the judge's demonstrated understanding of the issue before him, his colloquy with defense counsel suggests thoughtfulness and candor, not legal incompetence. The judge's colloquy with counsel before even applying the law does not establish grounds for disqualification. See *Roscoe*, 303 Mich App

---

[7] The resentencing judge's remark that he could consider sentencing defendant to greater than 60 years' imprisonment under the statute appears to have arisen from the parties' misstatement of the law in their sentencing agreement. Rather than providing the statutory language that "the maximum term shall be 60 years" as defined under MCL 769.25a(4)(c), the parties stated the maximum sentence "shall be *no less than* 60 years". MCL 769.25, which is inapplicable in this case, provides that requirement.

[8] The PSIR stated the *Miller* factors are: "a) circumstances of the offense; b) chronological age of the defendant; c) background, mental, and emotional development of the defendant; d) family and home environment; e) circumstances of the homicide offense, including the extent of participation and the way peer pressure may have affected the defendant; and f) potential of rehabilitation."

-9-

at 647-648 (explaining "one erroneous ruling" neither "create[s] a serious, objective risk of actual bias" nor "give[s] the appearance of impropriety").

For these reasons, defendant has also failed to demonstrate that the resentencing judge suffered from impaired competence. Further, defendant has failed to demonstrate any appearance of impropriety. *Caperton*, 556 US at 888. The resentencing judge and the chief judge, therefore, did not err by denying defendant's motion to disqualify.

Affirmed.

/s/ Anica Letica
/s/ James Robert Redford
/s/ Michelle M. Rick