HANSELMAN v KILLEEN

Docket No. 49009. Submitted June 1, 1981, at Detroit.—Decided January 6, 1982. Leave to appeal applied for.

John Hanselman brought an action against James R. Killeen and the Wayne County Concealed Weapon Licensing Board, seeking to enjoin the board from revoking his concealed weapon license. Wayne Circuit Court, Joseph B. Sullivan, J., denied relief. The plaintiff appeals. *Held:*

1. The plaintiff's appeal is properly taken. The plaintiff challenged the holding of the circuit court that the Administrative Procedures Act (APA) is inapplicable to proceedings of the licensing board.

2. The Wayne County Concealed Weapon Licensing Board is a state agency for the purpose of applying the provisions of the APA. The board must comply with the requirements of the act, and thus the plaintiff is entitled to the act's procedural protections.

3. The board failed to comply with the provision of the APA which requires it to include findings of fact or a statement of underlying facts in its final decision.

4. Certain board members improperly communicated with a witness subsequent to notice of hearing and after the hearing had begun and was adjourned contrary to the provisions of the APA, requiring remand for a new hearing before a temporary licensing board untainted by such improper contact or before a different circuit court judge if the assembly of a temporary board is impossible.

5. The witness improperly contacted by the board members may testify at the subsequent hearing unless the plaintiff is

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 79 Am Jur 2d, Weapons and Firearms § 14.
  Who is entitled to carry concealed weapons. 51 ALR3d 504.
[2] 2 Am Jur 2d, Administrative Law §§ 189, 202.
[3] 2 Am Jur 2d, Administrative Law §§ 189, 455, 456.
[4] 2 Am Jur 2d, Administrative Law §§ 362, 400, 414, 421, 426.
[5] 2 Am Jur 2d, Administrative Law § 421.

able to demonstrate prejudice sufficient to indicate permanent impairment of his ability to receive a fair hearing.

6. The plaintiff's license is restored pending resolution of the matter.

Reversed and remanded.

F. X. O'BRIEN, J., concurred in part and dissented in part. He would agree with the resolution of the legal issue but would simply reverse and reinstate the plaintiff's license for the balance of its term.

1. WEAPONS — CONCEALED WEAPONS — LICENSING BOARDS — REVOCATION OF LICENSES.

A concealed weapon licensing board, prior to revoking any weapon license for carrying a weapon contrary to the authorization of the license, must conduct a hearing (MCL 28.426[5], 28.428; MSA 28.93[5], 28.96).

2. WEAPONS — CONCEALED WEAPONS — LICENSING BOARDS — ADMINISTRATIVE AGENCIES — ADMINISTRATIVE PROCEDURES ACT.

A concealed weapon licensing board is a state agency for the purpose of applying the provisions of the Administrative Procedures Act and thus must comply with the procedural requirements of the act (MCL 24.201 *et seq.,* 28.426 *et seq.;* MSA 3.560[101] *et seq.,* 28.93 *et seq.).*

3. WEAPONS — CONCEALED WEAPONS — LICENSING BOARDS — FINAL ORDERS.

A concealed weapon licensing board's final decision to revoke a weapon license, to be in compliance with the requirements of the Administrative Procedures Act, must include findings of fact or a statement of underlying facts (MCL 24.285, 28.426 *et seq.;* MSA 3.560[185], 28.93 *et seq.).*

4. WEAPONS — CONCEALED WEAPONS — LICENSING BOARDS — REVOCATION OF LICENSES — CONTACT WITH WITNESSES.

A concealed weapon licensing board functions in an investigative and an adjudicative capacity and therefore is permitted to contact witnesses prior to notice of hearing while functioning in its investigative capacity; however, such contact subsequent to the notice or following an adjournment of a hearing is improper and is sufficient to require a new hearing before a tribunal untainted by the improper contact (MCL 24.282; MSA 3.560[182]).

5. WEAPONS — CONCEALED WEAPONS — LICENSING BOARDS — REVOCATION OF LICENSES — CONTACT WITH WITNESSES.

A witness who has been improperly contacted by members of a

concealed weapon licensing board after notice of a hearing need not be permanently disqualified to testify at subsequent hearings; however, where it can be demonstrated that the improper contact permanently impaired the possibility of a fair hearing the witness must be disqualified; where such prejudice cannot be demonstrated, the trier of fact may consider the improper contact in assessing the credibility of the witness (MCL 24.282; MSA 3.560[182]).

*Howard Alan Katz, P.C.* and *Hoffert & Litt, P.C.* (by *Paul H. Steinberg*), for plaintiff.

*William L. Cahalan,* Prosecuting Attorney, *Theodore Stephens,* Deputy Chief Assistant Prosecuting Attorney, Civil Department, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for defendant.

Before: BRONSON, P.J., and R. M. MAHER and F. X. O'BRIEN,* JJ.

PER CURIAM. Plaintiff filed suit in Wayne County Circuit Court seeking to enjoin revocation of his concealed weapon license by the Wayne County Concealed Weapon Licensing Board. The circuit court denied relief, and plaintiff appeals as of right.

Plaintiff was issued a concealed weapon license, restricted to business, home, and bank. On May 28, 1979, plaintiff's vehicle was stopped by a Michigan state trooper in the vicinity of Lapeer, Michigan. At the trooper's request, plaintiff produced his driver's license, which was attached to his concealed weapon license. The officer asked if plaintiff was carrying a weapon and confiscated the weapon upon receiving an affirmative response. The local prosecutor sent the officer's report to the defendant Wayne County Concealed Weapon Licensing Board ("licensing board").

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The licensing board convened on July 10, 1979, and revoked plaintiff's weapon license. Since no hearing was conducted, plaintiff had no opportunity to present his case to the licensing board. The board's action was based solely on the state trooper's report and the letter from the local prosecutor.

Concealed weapon licensing boards are specifically required to conduct a hearing before revoking any weapon license. MCL 28.428; MSA 28.96. Accordingly, the circuit court granted plaintiff's *ex parte* motion for an injunctive order requiring defendants to issue a license to plaintiff and to afford him a revocation hearing.

The board conducted such a hearing on September 21, 1979. MCL 28.426(5); MSA 28.93(5) provides that a concealed weapon license "shall be an authorization to carry a pistol in compliance with this section only to the extent contained in the face of the license and the license shall be revoked by the board if the pistol is carried contrary to the authorization". The state trooper gave testimony tending to show that when the weapon was confiscated plaintiff was not engaged in "business" and therefore was carrying a weapon "contrary to the authorization of his license". Plaintiff and his employer testified that when the weapon was confiscated plaintiff was carrying $7,000 in cash to be delivered to the employer the following day.

In the course of the trooper's testimony, it became apparent that he had discussed the case with the licensing board prior to the hearing and that the board had told him "the essence of what transpired before the hearing".

After the hearing, the licensing board informed plaintiff that it had decided to cancel his license on the ground of improper use of license". Plaintiff

thereupon instituted a second civil action in Wayne County Circuit Court, once again seeking to enjoin revocation of his license. Plaintiff contended that the licensing board failed to comply with two provisions of the Administrative Procedures Act of 1969 ("APA"), MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* The circuit court held that the APA was inapplicable to the licensing board's proceedings and denied relief, prompting this appeal.

The licensing board initially attacks the propriety of the present appeal, claiming that plaintiff "has not challenged the [circuit] court's denial of relief", and that therefore no grounds for appeal have been presented. To the contrary, plaintiff has properly challenged the circuit court's holding that the APA is inapplicable to the licensing board's proceedings. Consequently, this contention is without merit.

The purpose of the Legislature in enacting the APA was, *inter alia,* "to provide for state agency administrative procedures and contested cases and appeals therefrom in licensing and other matters * * *". 1969 PA 306, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.*

The APA defines an "agency" as "a state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute, or agency action". MCL 24.203(2); MSA 3.560(103)(2). Clearly, the licensing board is a "board * * * created by * * * statute". However, the APA is inapplicable to the board's proceedings unless the board is also a *"state * * * board * * * created by * * * statute".* (Emphasis supplied.) This is a question of first impression.

The licensing board is part of a uniform statewide system created by the state to control and

regulate the possession of firearms. County licensing boards are not created under county governmental authority and are not subject to county control. The statute creating the licensing boards indicates substantial state involvement: (1) Each board must adhere to a comprehensive scheme of state-imposed rules; (2) a representative of the director of the Department of State Police is a member of each board; and (3) the state police check fingerprints of applicants and provide license forms.

The regulation of firearms is within the state's police power. See, *e.g., Bay County Concealed Weapons Licensing Board v Gasta,* 96 Mich App 784, 788; 293 NW2d 707 (1980):

"The existence of the Concealed Weapons Licensing Board reflects the state's legitimate interest in limiting public access to weapons * * *."

Although the Michigan courts have not had occasion to deal with this question, other jurisdictions have addressed analogous issues. For example, the Washington Supreme Court, in holding that municipal housing authorities were excluded from the Washington Administrative Procedures Act, stated:

"We believe the legislature meant what it said when it defined 'agency' * * * for the purpose of [the Washington Administrative Procedures Act] as 'any state board * * *.' The legislature did not intend this definition to include local *agencies * * * that are not concerned with statewide programs or that are not part of a statewide system." Riggins v Housing Authority of Seattle,* 87 Wash 2d 97, 100-101; 549 P2d 480 (1976). See Revised Code of Washington 34.04.010 *et seq.* (Emphasis supplied.)

The Michigan concealed weapon licensing boards administer a statewide program and are part of a statewide system. The Legislature has indicated its intent to include the boards within the APA definition of an "agency". Accordingly, we hold that the defendant licensing board must comply with the requirements of the APA.

Since we have concluded that the plaintiff is entitled to the procedural protections of the APA, we need not decide whether similar procedural rights are mandated by the Due Process Clauses of the United States Constitution and the Michigan Constitution.

The licensing board failed to comply with two provisions of the APA. First of all, the APA provides detailed requirements for final orders of "agencies":

"A final decision or order of an agency in a contested case shall be made within a reasonable period, in writing or stated in the record and shall include findings of fact and conclusions of law. Findings of fact shall be based exclusively on the evidence and on matters officially noticed. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting them. If a party submits proposed findings of fact which would control the decision or order, the decision or order shall include a ruling upon each proposed finding. Each conclusion of law shall be supported by authority or reasoned opinion." MCL 24.285; MSA 3.560(185).

The licensing board's final decision to revoke plaintiff's license was clearly deficient under the statute, since it did not include "findings of fact" or a "statement of * * * underlying facts". The board's decision consisted entirely of the statement "cancelled-improper use of license".

The board also violated § 82 of the APA, which provides in part:

"Unless required for disposition of an *ex parte* matter authorized by law, a member or employee of an agency assigned to make a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except on notice and opportunity for all parties to participate. This prohibition begins at the time of the notice of hearing." MCL 24.282; MSA 3.560(182).

Plaintiff's hearing before the licensing board convened on September 21, 1979. After plaintiff and his employer finished their testimony, the hearing was adjourned until October 9, 1979, in order to permit the state trooper to testify before the board. In the intervening period, board members discussed the case with the state trooper, telling him "the essence of what transpired" at the earlier hearing.

Clearly, the board's conduct amounted to communication "in connection with any issue of fact, with any person", which is proscribed by the APA. However, the licensing board makes two arguments against affording plaintiff a remedy for this violation. First, the board argues that since it must perform both investigative and adjudicative functions, and since it has no investigative staff other than the police, "some limited degree of contact with prospective witnesses is necessary" if the board is "to function at all". We believe such a "rule of reason" approach is unnecessary, since the Legislature has accommodated the licensing board's need to communicate with witnesses by allowing communication prior to notice of hearing.

MCL 24.282; MSA 3.560(182). Second, the board argues that improper contact with a witness does not require reversal absent an affirmative showing of prejudice. This issue requires a more lengthy analysis.

In enacting the APA "witness communication" provision the Legislature intended to combat two distinct evils. First of all, the Legislature intended to ensure the impartiality of administrative tribunals acting in an adjudicative capacity. Secondly, the Legislature intended to preserve the integrity of administrative proceedings by removing opportunities to aid witnesses in tailoring their testimony and thus permanently impairing an adverse party's chances of obtaining a fair hearing.

Even where no prejudice is demonstrated, the proper remedy for a violation of the APA "witness communication" provision is a new hearing before a tribunal untainted by improper witness contacts. We believe that such conduct by an administrative tribunal raises a substantial possibility that it is unable to discharge its adjudicative responsibilities in an impartial manner. It is therefore inappropriate to require an affirmative showing of prejudice; the appearance of impropriety should be sufficient.

We therefore remand this case to the circuit court to supervise the appointment of a temporary licensing board for the purpose of conducting a new hearing on the question of whether plaintiff has violated the restrictions of his concealed weapon license. Since this temporary board is to function only in an adjudicative capacity, we direct the circuit court to ensure that the temporary appointees have not previously communicated with members of the defendant licensing board or any other person in reference to plaintiff's case. In addition, the circuit court is directed to ensure

that no such communication takes place prior to a final decision by the temporary board. If it is not possible to assemble such a board, the circuit court is directed to conduct the violation-of-restrictions hearing on its own.

In order to prevent any possible prejudice flowing from the original circuit court judge's awareness of evidence which may be inadmissible at subsequent hearings, we direct the assignment of a different judge on remand. In so doing, we intimate no finding of prejudice on the part of the original judge.

Since two additional issues are likely to arise in the course of subsequent hearings, it is important to address them at this time. First of all, plaintiff argues that future testimony from the state trooper will be so tainted by the licensing board's interference that it must be "disregarded" on the ground that either due process or the APA requires its exclusion.

We do not believe that either due process or the APA requires, absent a showing of prejudice, the permanent disqualification of a witness who has been improperly contacted by the licensing board, and plaintiff has cited no authority in support of this novel proposition. The board functions in both an investigative and an adjudicative capacity and therefore is permitted to contact witnesses while acting in an investigative role, prior to notice of hearing. MCL 24.282; MSA 3.560(182). On remand, however, if plaintiff can demonstrate to the satisfaction of the circuit court that the licensing board's "improper communication" has permanently impaired his ability to receive a fair hearing, the state trooper must be disqualified as a witness. Even if plaintiff fails to establish prejudice, the trier of fact may consider the board's

improper communications in assessing the credibility of the state trooper's testimony.

One additional issue merits consideration at this time. At his hearing before the licensing board, plaintiff sought to establish that he was carrying a large amount of cash to be delivered the next day to his employer when stopped by the state trooper. At the time, plaintiff was returning from a horse show near Lapeer which he had attended "for his own amusement". The circuit court apparently felt that even if plaintiff's version of the facts were accepted, revocation of his license would still be justified, on the ground that plaintiff's conduct was beyond the authority of a weapon license restricted to "business, home and bank". We disagree. "Business" is a broad term, and an employee carrying a weapon to protect cash to be delivered to his employer is surely on "business". The licensing board is free to place restrictions on weapon licenses which would make it clear that such conduct is unauthorized, but they have not done so in the present case.

Since the licensing board failed to comply with the APA in revoking plaintiff's license, we order its immediate restoration under the prior restrictions until the conclusion of future proceedings in accordance with this opinion.

Reversed and remanded for further proceedings in Wayne County Circuit Court. We retain no further jurisdiction.

F. X. O'BRIEN, J. *(concurring in part and dissenting in part)*. I agree with the resolution of the legal issue but would simply reverse the circuit court and reinstate plaintiff's license for the balance of its term.