HANSELMAN v WAYNE COUNTY CONCEALED WEAPON
LICENSING BOARD

Docket No. 68736. Argued March 7, 1984 (Calendar No. 10).—Decided
July 19, 1984.

The Wayne County Concealed Weapon Licensing Board revoked
John Hanselman's permit to carry a concealed weapon on the
ground that he had carried the weapon in violation of the
restrictions which had been imposed at the time the permit was
issued. Mr. Hanselman brought an action in the Wayne Circuit
Court against the board and its clerk, seeking to enjoin the
board's action on the ground that the board had not complied
with the requirements of the Administrative Procedures Act.
The court, Joseph B. Sullivan, J., held that the board was not a
state agency and was not subject to the APA. The Court of
Appeals, Bronson, P.J., and R. M. Maher, J. (F. X. O'Brien, J.,
concurring in part and dissenting in part), reversed (Docket No.
49009). The defendants appeal.

. In a unanimous opinion by Justice Ryan, the Supreme Court
*held:*

Because the Wayne County Concealed Weapon Licensing
Board is not a state agency as defined by the Administrative
Procedures Act, it is not subject to the provisions of the act.

1. An "agency" subject to the provisions of the Administra-
tive Procedures Act is a *state* department, bureau, division,
section, board, commission, trustee, authority, or officer created
by the constitution, statute, or agency action. The word "state"
modifies all of the units and positions listed, and not only the
word department. The administrative procedures statute that
preceded the current act had a similar list and was so inter-
preted judicially. The reenactment of the definition of "agency"
in the current act without a change in its structure indicates
that the Legislature was satisfied with the judicial interpreta-
tion. In addition, an agency, to be subject to the act, must be

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 203.
[2, 4] 2 Am Jur 2d, Administrative Law § 204.
[3] 2 Am Jur 2d, Administrative Law § 202.

created by the constitution, statute, or agency action. Where the two criteria are met, the agency is subject to the act unless specifically exempted.

2. The Wayne County Concealed Weapon Licensing Board was created by statute and is not specifically exempted from the provisions of the APA. To determine whether the board is a *state* board, however, its character, relations, and functions must be examined. "State" status is not dependent upon the presence of particular characteristics. Rather, it is determined by a review of all relevant characteristics. When considered together, the board's characteristics are more non-state-like than state-like, revealing a composite character that is not that of a state board. Any relationship between the board and the state is minimal and is overwhelmed by the relationship between the board and local government. In addition, the function of the board is local.

3. The fact that the board was authorized by a statute is not determinative of whether it is a state board because the power of local governments to authorize any board is derived ultimately from the state. The presence of the director of the Department of State Police or his deputy on the board does not render it a state board. To so regard it would ignore the local character of the remaining members of the board and their ability to control the actions of the board by voting together. Nor do state-imposed requirements for applicants lead to the conclusion that the board is a state board. The requirements are general in nature, and the decision with respect to who should be granted a license is left in the discretion of the board. Finally, the taking of an applicant's fingerprints on forms supplied by the state police and the checking of the prints by the state police indicates nothing more than a rational system to assure thorough review. By contrast, the board exercises only local jurisdiction in granting licenses, each local board acts independently of all other local boards and not as a subunit of a state system, and fees paid by applicants are paid to, and 80% of the fees are retained by, local governments.

4. The procedure for license revocation in the concealed weapon licensing statute predates passage of the APA. Despite substantial amendments to other portions of the licensing statute and passage of two APA's during its tenure, the procedure has remained unaltered, consistent with an interpretation that the licensing board is not subject to the APA and that the Legislature perceived no conflict between the APA and the statute.

Reversed and remanded.

112 Mich App 275; 316 NW2d 237 (1982) reversed.

1. WEAPONS — ADMINISTRATIVE LAW — STATE AGENCIES — LICENSING BOARDS.

A county concealed weapon licensing board is not a state agency and is not subject to the requirements of the Administrative Procedures Act (MCL 24.201 *et seq.*, 28.426; MSA 3.560[101] *et seq.*, 28.93).

2. ADMINISTRATIVE LAW — STATE AGENCIES — ADMINISTRATIVE PROCEDURES ACT.

An "agency", as defined by the Administrative Procedures Act, is a state department, bureau, division, section, board, commission, trustee, authority, or officer that is created by the constitution, statute, or agency action; it is subject to the requirements of the act unless specifically exempted (MCL 24.203[2]; MSA 3.560[103][2]).

3. ADMINISTRATIVE LAW — STATE AGENCIES — ADMINISTRATIVE PROCEDURES ACT.

The character, relations, and function of a board must be examined to determine whether it is a state board subject to the requirements of the Administrative Procedures Act; "state" status is not dependent upon the presence of particular characteristics, but rather is determined by a review of all relevant characteristics, relations, and functions (MCL 24.203[2]; MSA 3.560[103][2]).

4. WEAPONS — ADMINISTRATIVE LAW — STATE AGENCIES — LICENSING BOARDS.

The characteristics, relations, and functions of county concealed weapon licensing boards, taken as a whole, are not those of a state board, but rather are overwhelmingly local, leading to the conclusion that the boards are not state boards and are not subject to the requirements of the Administrative Procedures Act (MCL 24.201 *et seq.*, 28.426; MSA 3.560[101] *et seq.*, 28.93).

*John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the defendants.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Michael J. Moquin,* Assistant Attorney General, for the Attorney General.

RYAN, J. The broad issue in this case is whether the Wayne County Concealed Weapon Licensing Board is an "agency" within the meaning of the Michigan Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.,* so that the board is required to comply with the provisions of the act. Resolution of this broad issue requires the Court to decide two specific questions. First, does the Michigan Administrative Procedures Act apply only to "state * * * board[s]", or does it apply additionally to non-state boards which are created by statute. Second, if the Michigan Administrative Procedures Act applies only to "state * * * boards", is the Wayne County Concealed Weapon Licensing Board a "state * * * board" within the meaning of the act.

We hold that the Michigan Administrative Procedures Act applies only to an "agency" and that the statutory definition of "agency" requires that the "department, bureau, division, section, board, commission, trustee, authority or officer" be a "state" unit or position. Additionally, we hold that the Wayne County Concealed Weapon Licensing Board is not a *"state * * * board"* within the meaning of the Michigan Administrative Procedures Act and consequently is not an "agency" subject to the provisions of the act. Therefore, we reverse the decision of the Court of Appeals and remand to that Court for consideration of questions left unanswered by their opinion. *Hanselman v Killeen,* 112 Mich App 275; 316 NW2d 237 (1982).

I

The plaintiff, John Hanselman, applied for a

concealed weapon license from the Wayne County Concealed Weapon Licensing Board in 1973. The plaintiff requested the license because his work for a talent agency required him to make nightly collections of cash and checks from various bars and then to hold the cash and checks until the next regular business day when he deposited the collections with his employer. The board issued a concealed weapon license to the plaintiff, but restricted it to use in the plaintiff's business or to use in travel to and from his home and bank.

On Monday, May 28, 1979, Memorial Day, the plaintiff was driving with his wife near Lapeer, Michigan, when he was stopped by state trooper Mark Calcatera. Officer Calcatera, who earlier had been flagged down by a motorist who reported that the plaintiff's car was weaving and running off the road, asked to see the plaintiff's driver's license. When the plaintiff produced his driver's license, he also produced his concealed weapon license which was attached to the driver's license. In response to Officer Calcatera's questions, the plaintiff indicated that he was carrying the weapon. After removing a gun from the plaintiff's boot and questioning him further, Officer Calcatera took the plaintiff to the police station where he "interviewed" the plaintiff and made a report. The plaintiff was released following this brief detention.

The Lapeer County prosecutor elected not to charge the plaintiff with a concealed weapon license violation. Instead, he instructed the state police to forward a copy of Officer Calcatera's report to the Wayne County prosecutor, a member of the board.[1] Officer Calcatera's report stated that

---

[1] MCL 28.426(1); MSA 28.93(1) provides that the "prosecuting attorney, the sheriff, and the director of the department of state police, or their respective authorized deputies, shall constitute boards exclusively authorized to issue a license to an applicant residing within their respective counties, to carry a pistol concealed on the person".

the plaintiff was advised of his *Miranda* rights and that, after waiving his *Miranda* rights, the plaintiff indicated that "he knew he was in violation of his permit, however, [he] didn't feel anything would happen to him, due to the fact that he had the permit and has carried the gun for a long time". Additionally, the Lapeer County prosecutor wrote to the Wayne County prosecutor indicating that, while he would not pursue a criminal proceeding against the plaintiff, "[p]erhaps the board should review Mr. Hanselman's suitability for a concealed weapon permit, in view of his apparent disregard for the limitations in his permit". Based solely upon Officer Calcatera's report and the Lapeer County prosecutor's letter, the board revoked the plaintiff's concealed weapon license at their July 10, 1979 meeting.

The plaintiff, who had been present at the July 10 meeting of the board and had sought to present his side of the Memorial Day incident, appealed the board's decision to the Wayne Circuit Court seeking an order to show cause why a preliminary injunction should not enter requiring the board to issue a concealed weapon license to the plaintiff. The plaintiff based this request upon a claim that the hearing provided by the board violated the APA, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* Specifically, he requested a

"hearing which complies with minimum due process standards, to wit:

"i. The opportunity to defend by confronting and cross-examining adverse witnesses;

"ii. The opportunity for plaintiff to present his own arguments and evidence orally;

"iii. A written record of the proceedings;

"iv. A written decision based solely upon the legal rules and evidence adduced at the hearing, stating the

reasons for this decision, and indicating the evidence relied upon;

"v. That plaintiff receive timely and adequate notice of said hearing; and

"vi. That plaintiff have the right to appear with counsel."

The circuit court entered a temporary injunction which required the board to issue a concealed weapon license and enjoined the board from revoking the plaintiff's concealed weapon license until it had given the plaintiff a "full hearing".

The board conducted hearings on September 21, 1979 and October 9, 1979. The plaintiff was given adequate and timely notice of both hearings. He was allowed to present evidence, to cross-examine adverse witness, and to be represented by counsel. A written transcript of the proceedings was made. On the first day of the hearing, the plaintiff and his employer testified. The plaintiff testified that he had made collections in the amount of $7,000 over the Memorial Day weekend, that he was required to keep the money on his person, that he had gone to Lapeer County to see a horse show but was still carrying the money in connection with his job, and that he never told Officer Calcatera that he was not in the course of his business or that he knew that he was acting in violation of his concealed weapon license. The plaintiff's employer testified that, in fact, the plaintiff was required to keep the collected money on his person until he delivered it to him on the next regular business day, that the office was closed from Friday night until Tuesday morning due to the Memorial Day holiday, and that the plaintiff deposited about $6,500 on the Tuesday after Memorial Day. On the second day of the hearing, Officer Calcatera and the plaintiff's wife testified. Officer Calcatera indi-

cated that he stopped the plaintiff because a citizen reported his erratic driving, that the plaintiff admitted that he was in violation of his concealed weapon permit, that the plaintiff never mentioned anything about carrying money in connection with his job, that the officer did not observe the plaintiff to be carrying any large amount of money when he patted him down, and that he had discussed the earlier day's testimony with the board prior to his testimony. The plaintiff's wife stated that her husband was carrying a large sum of money at the time that Officer Calcatera stopped him, that he never stated that he knew that he was in violation of his concealed weapon permit while she was present, that she heard him say that he was carrying a large sum of money, and that Officer Calcatera was wrong in stating anything to the contrary.

Following the September 21 and October 9 hearings, the board again revoked the plaintiff's concealed weapon license. On October 18, 1979, the board notified the plaintiff of its decision to again revoke his concealed weapon license. There is no written explanation of the board's decision in the record. However, it appears that the board relied upon MCL 28.426(5); MSA 28.93(5), which requires a concealed weapon licensing board to revoke a license when the gun is "carried contrary to the authorization".[2]

---

[2] MCL 28.426(5); MSA 28.93(5) provides:

"The application for a license shall state the reason or reasons for the necessity or desirability of carrying a pistol concealed on the person or a pistol, whether concealed or otherwise, in a vehicle operated or occupied by the person applying for the license, and the license if issued, shall be restricted to the reason or reasons satisfactory to the board, which restriction or restrictions shall appear on the face of the license in a conspicuous place. The license shall be an authorization to carry a pistol in compliance with this section only to the extent contained in the face of the license and the license *shall be revoked* by the board if the pistol is carried contrary to the authorization." (Emphasis added.)

The plaintiff again appealed the board's decision to the Wayne Circuit Court. There, the plaintiff made three claims. First, he asserted that the board had failed or refused to comply with the temporary injunction order to provide a full, fair, and impartial hearing. Second, he claimed that the board violated the APA, the Due Process Clause of the United States Constitution, and the Due Process Clause of the Michigan Constitution.[3] Finally, the plaintiff claimed that the board committed a substantial and material error of law in finding that the plaintiff was not "at work" on Memorial Day. The circuit court again issued a show-cause order. However, on November 16, 1979, the circuit court denied the plaintiff's requested relief. First, it found that the board was not subject to the APA. Additionally, even if the board was subject to the APA, a "rule of fairness" would require that the plaintiff demonstrate some harm resulting from the board's violation of the APA provisions. The record, according to the circuit court, did not demonstrate that the plaintiff suffered any harm from the alleged violations. Second, the circuit court held that the board had acted within the scope of its authority. Third, the circuit court held that the record substantiated the board's finding

[3] The plaintiff raised two specific objections based upon the requirements of the APA. First, the plaintiff asserted that the board's final decision was deficient because it did not include findings of fact or a statement of underlying facts as required by MCL 24.285; MSA 3.560(185). Second, the plaintiff asserted that the board's hearing was tainted because the board members had discussed the case with Officer Calcatera before he gave his testimony. The plaintiff claimed this to be in violation of MCL 24.282; MSA 3.560(182) which states:

"Unless required for disposition of an ex parte matter authorized by law, a member or employee of an agency assigned to make a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except on notice and opportunity for all parties to participate".

that the plaintiff was not "at work" or in the course of his business on Memorial Day when he was stopped. The circuit court did not specifically discuss the plaintiff's objection that the board violated the temporary restraining order or that the hearing violated the Due Process Clauses of the federal and state constitutions. However, in denying the plaintiff's request, it presumably found them unsupported by the record.

The plaintiff then appealed to the Court of Appeals, stating the same three questions: first, the plaintiff claimed that the circuit court had erred in finding that the board was not an "agency" subject to the provisions of the APA; second, the plaintiff claimed that the hearing provided by the board violated the APA and the Due Process Clauses of the federal and state constitutions; and, third, he claimed that the board had committed a substantial and material error of law in finding that the plaintiff was not "at work" or in the course of his employment on Memorial Day when he was stopped. The Court of Appeals focused on the plaintiff's first claim and found that the board was indeed an "agency" subject to the provisions of the APA since it was a "state * * * board". Additionally, the Court of Appeals found that the board had not complied with two provisions of the APA. Therefore, the Court of Appeals reversed the decision of the circuit court and remanded the case to the Wayne Circuit Court (excluding the original circuit judge) for appointment of a temporary concealed weapon license board to hear the plaintiff's case and determine, in accordance with the APA, whether the plaintiff violated the restrictions on his concealed weapon license.[4] While the

---

[4] In partial dissent, Judge F. X. O'BRIEN "would simply reverse the circuit court and reinstate plaintiff's license for the balance of its term". *Hanselman, supra,* p 285.

Court of Appeals did not find it necessary to discuss whether the hearing violated the due process requirements of the state or federal constitution, it did note that, absent a showing of prejudice, Officer Calcatera's testimony should not be permanently disqualified because of his contact with the board. Additionally, while the Court of Appeals did not find that the board erred in finding that the plaintiff was not "at work" or in the course of his employment on Memorial Day when he was stopped, it did state that "business" is a broad term and "an employee carrying a weapon to protect cash to be delivered to his employer is surely on 'business' " unless the license makes clear that such conduct is prohibited.

The board applied to this Court, and we granted leave to appeal. 417 Mich 1039 (1983).[5]

## II

The general issue in this case is whether the board is an "agency" within the meaning of the APA and therefore required to comply with the procedural requirements of the APA. Resolution of this issue requires that we decide two specific points argued by the parties. First, does the statutory definition of "agency" apply only to a *state* "board * * * created by * * * statute" or does it apply to any "board * * * created by * * * statute?" Second, if the "agency" definition requires that the board be a "state * * * board", does the board meet that requirement? The issues shall be addressed separately.

## A

The parties agree that the APA provisions apply

---

[5] The plaintiff has not participated in this case in this Court. Therefore, we have relied upon his Court of Appeals pleading in ascertaining his argument and position.

only to an "agency". They also agree that the APA defines an "agency" in MCL 24.203(2); MSA 3.560(103)(2):

"(2) 'Agency' means a state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute, or agency action. It does not include an agency in the legislative or judicial branches of state government, the governor, an agency having direct governing control over an institution of higher education, or the state civil service commission."

However, the parties do not agree on whether a "board * * * created by * * * statute" must be a "*state* * * * board" to be an "agency" within the meaning of the APA. The plaintiff claims that the statutory definition encompasses the board since it is a "board * * * created by * * * statute". According to the plaintiff's understanding, the word "state" modifies only the word "department" and does not modify all the units and positions which follow. Therefore, an "agency" is a "state department" *or* a "bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute, or agency action". The defendant disagrees with this interpretation and asserts that the word "state" modifies all the subsequent units or positions. Therefore, as applied to the board, it must be both "created by * * * statute" and a "state * * * board" in order to be an "agency" subject to the provisions of the APA.

The Court of Appeals agreed with the board that an "agency" under the APA must be a "state" unit or position "created by the constitution, statute, or agency action". Therefore, as applied to

this case, the Court of Appeals held that the board was an "agency" only to the extent that it was a "state * * * board" and "created by * * * statute".

We agree with the Court of Appeals and the board that the plaintiff's interpretation of MCL 24.203(2); MSA 3.560(103)(2) is untenable. Properly interpreted, the statutory definition of an "agency" has two components. The first component of an "agency" is that it is a "state department, bureau, division, section, board, commission, trustee, authority or officer". Contrary to the plaintiff's assertion, the word "state" modifies each and every one of the subsequent units or persons and does not merely modify the word "department". This interpretation is supported by three facts. First, the title of the APA states that it is "[a]n act to provide for the effect, processing, promulgation, publication, and inspection of *state agency* rules, determinations and other matters; * * * to provide for *state agency* administrative procedures and contested cases and appeals from contested cases * * *; to provide for declaratory judgments as to rules; and to repeal certain acts and parts of acts." (Emphasis added.) Second, the APA's predecessor act[6] was interpreted by the Court of Appeals in *Detroit v General Foods Corp,* 39 Mich App 180, 186; 197 NW2d 315 (1972), and in *Righter v Adrian Civil Service Comm,* 1 Mich App 468, 473; 136 NW2d 718 (1965), *lv den* 377 Mich 696 (1966). Like the present statute, the predecessor statute used the word "state" followed by a sequential list of units or persons:

" 'Agency' means any state board, commission, de-

[6] MCL 24.101(1); MSA 3.560(21.1)(1), repealed and replaced by 1969 PA 306, MCL 24.203; MSA 3.560(103) and MCL 24.207; MSA 3.560(107), effective July 1, 1970.

partment, bureau or officer, authorized by law to make rules or to adjudicate contested cases, except the workmen's compensation commission, the employment security commission, the department of revenue, the public service commission and those in the legislative and judicial branches." MCL 24.101(1); MSA 3.560(21.1)(1). Repealed and replaced by 1969 PA 306, MCL 24.203; MSA 3.560(103) and MCL 24.207; MSA 3.560(107), effective July 1, 1970.

In both cases, the Court of Appeals found that "agency" meant a "state agency", *i.e.,* a "state board", "state commission", "state department", "state bureau", or "state officer". Therefore, since the Legislature is presumed to legislate in conformity with prior judicial decisions, the Legislature's adoption of the same agency definition structure is presumed to be with knowledge that it had been held to apply only to "state" agencies in *Righter, supra. Jeruzal v Wayne County Drain Comm'r,* 350 Mich 527; 87 NW2d 122 (1957). Moreover, in the decade since the *General Foods Corp* decision, the Legislature has not changed the structure of the "agency" definition or in any way indicated its disapproval of the judicial interpretation. Therefore, the Legislature's adoption of the same structure for the 1969 Act as was used in the earlier act and the Legislature's inactivity since that time indicate that, absent contrary indications, the Legislature is satisfied with the judicial interpretation. *Magreta v Ambassador Steel Co (On Rehearing),* 380 Mich 513; 158 NW2d 473 (1968). Finally, simple logic indicates that there would be no reason for the Legislature to make "state departments" subject to the provisions of the APA without any other condition while it made "state divisions", "state sections", "state boards", "state commissions", etc., subject to the APA provisions only if they met other conditions.

Therefore, the first aspect of an "agency" is that it is a "state" unit or person.

In addition to this "state" component, MCL 24.203(2); MSA 3.560(103)(2) states a second component of the "agency" definition. That is, an "agency" must be "created by the constitution, statute, or agency action". This component is self-explanatory.

If the two components stated above are met, the entity is an "agency". However, not all agencies are required to comply with the mandates of the APA. The final sentence of MCL 24.203(2); MSA 3.560(103)(2) exempts certain agencies from the provisions of the APA:

"It does not include an agency in the legislative or judicial branches of state government, the governor, an agency having direct governing control over an institution of higher education, or the state civil service commission."

Therefore, the proper interpretation of MCL 24.203(2); MSA 3.560(103)(2), requires the presence of two characteristics for an "agency", *i.e.,* it must be a "state" unit or position and it must be "created by the constitution, statute, or agency action". If these two requirements are met and it is not specifically exempted by the final sentence of MCL 24.203(2); MSA 3.560(103)(2), an "agency" is subject to the provisions of the APA.

B

Stating the elements of the statutory definition of an "agency" does not end our inquiry or decide this case. We must now apply that definition to determine whether the board is an "agency" within the meaning of the APA.

In applying the "agency" definition to the board, there is no dispute that the board is "created by * * * statute" and that it is not specifically exempted from the APA. MCL 28.426(1); MSA 28.93(1) authorizes concealed weapon licensing boards such as the defendant:

"The prosecuting attorney, the sheriff, and the director of the department of state police, or their respective authorized deputies, shall constitute boards exclusively authorized to issue a license to an applicant residing within their respective counties, to carry a pistol concealed on the person and to carry a pistol, whether concealed or otherwise, in a vehicle operated or occupied by the applicant."

Moreover, the board is not an "agency of the legislative or judicial branches of state government, the governor, an agency having direct control over an institution of higher education, or the state civil service commission".

However, the parties vigorously debate whether the board is a "state * * * board" or a non-state board. If the board is a "state * * * board", it is an "agency" within the meaning of the APA. However, if it is not a "state * * * board", it is not an "agency" subject to the provisions of the APA.

1

The APA provides no explicit guidance concerning whether the board is a "state * * * board". It makes no statements on the scope of the phrase "state * * * board" and it does not define the word "state". Therefore, we must assume that the word "state", as used in the APA, has its general, commonly understood meaning.

In determining whether the board is a "state

* * * board" within the commonly understood meaning of the word, we are not without guidance. In *Advisory Opinion re Constitutionality of PA 1966, No 346,* 380 Mich 554, 571; 158 NW2d 416 (1968), this Court was required to determine whether the "state" housing development authority was an instrumentality of state government. To do so, the Court outlined three inquiries relevant to determining "state" status:

"We must * * * look behind the name to the thing named. We must examine its character, its relations, and its functions to determine, indeed, whether it is an agency or instrumentality of State government."

While that opinion is not "on point" with this one, we believe that the analysis presented there to determine "state" status is appropriate in this case for determining whether the board is a "state * * * board".[7] Therefore, we shall separately discuss the "character[istics]" of the board, the "relations[hip]" between the board and the state, and the "functions" performed by the board. Such analysis will provide a broad-based composite picture of the board, thereby enabling this Court to determine whether it is a "state * * * board" or a non-state board.

a

The first portion of the analysis requires consideration of the characteristics with which the Legis-

_____

[7] A similar approach has been adopted by other courts. See, *e.g.,* *Green v Cowlitz County Civil Service Comm,* 19 Wash App 210; 577 P2d 141 (1978), *Westchester County v Rent Guidelines Bd,* 71 AD2d 655; 419 NYS2d 6 (1979), and *Riggins v Housing Authority,* 87 Wash 2d 97; 549 P2d 480 (1976).

lature endowed the board through the concealed weapon licensing statute.

In his argument, the plaintiff highlighted several characteristics possessed by the board which he believed indicated that the board was a "state * * * board". First, the plaintiff noted that the board is created by state statute pursuant to the Legislature's exercise of its police powers and that the board garners none of its authority from local statutes or ordinances. Indeed, the Legislature made the concealed weapon licensing board the exclusive dispenser of concealed weapon licenses, thereby prohibiting a local statute or ordinance creating or authorizing local concealed weapon licensing boards. See MCL 28.426; MSA 28.93. Second, by law, one member of every concealed weapon licensing board is the director of the Department of State Police or his deputy. As such, a state official participates in every action of a concealed weapon licensing board. See MCL 28.426; MSA 28.93. Third, the board may grant concealed weapon licenses only to applicants possessing certain mandatory attributes. For example, the concealed weapon licensing board may not grant a license unless the applicant is at least 18 years of age, is a citizen of the United States, has been a resident of the State of Michigan for at least six months, has not been convicted of or confined for a felony in the preceding eight years, and has not been adjudged insane (unless subsequently adjudged to have recovered his sanity). Finally, the state police are responsible for providing forms upon which the fingerprints are recorded and for checking the fingerprints of all applicants for concealed weapon licenses.

The Court of Appeals adopted the plaintiff's argument that the board possessed these state-like characteristics and held that the board was a

"state * * * board". In explaining its holding, the Court of Appeals restated the plaintiff's assertions:

"County licensing boards are not created under county governmental authority and are not subject to county control. The statute creating the licensing boards indicates substantial state involvement: (1) Each board must adhere to a comprehensive scheme of state-imposed rules; (2) a representative of the director of the Department of State Police is a member of each board; and (3) the state police check the fingerprints of applicants and provide license forms. *Hanselman, supra,* p 280.

The board asserts that the Court of Appeals misconceived the character of the board by focusing only upon selected state-like characteristics and not considering those characteristics in the light of their counterpart local, non-state-like characteristics. Specifically, the board claims that the Court of Appeals erred in finding no local control and in finding "substantial state involvement" because of the state-imposed rules and the role of the state police in the workings of the concealed weapon licensing boards. We agree.

In evaluating the characteristics of the board to determine whether it is a "state * * * board" or a non-state board, it is essential to avoid selective consideration of the board's characteristics. While the plaintiff and the Court of Appeals are clearly correct in saying that the board possesses the characteristics enumerated in the Court's holding, they are in error in not weighing the importance of these characteristics. Stated differently, "state" status in this case is not dependent upon the presence of a particular characteristic or a select group of characteristics. Rather, "state" status is determined by a review of all relevant characteris-

tics which, when considered together, indicate the overall character of the board. As will be demonstrated, the board possesses many non-state-like characteristics in addition to the state-like characteristics identified by the plaintiff and the Court of Appeals. When considered together, the board possesses considerably more non-state-like characteristics than state-like characteristics and its composite character is not that of a "state * * * board".

The first characteristic identified by the plaintiff and the Court of Appeals is that the board was created by a state statute. Initially, one is hesitant to consider this a "characteristic" of the board. However, even if it is a characteristic, it is not one which is indicative of "state" status. To so hold would be to confer on all governmental action, local and state, "state" status. For, as this Court has repeatedly stated, local governments have no inherent powers and possess only those limited powers which are expressly conferred upon them by the state constitution or state statutes or which are necessarily implied therefrom. *Alan v Wayne County,* 388 Mich 210; 200 NW2d 628 (1972); *Mason County Civic Research Council v Mason County,* 343 Mich 313; 72 NW2d 292 (1955). Therefore, all action authorizing any board ultimately garners its justification from an exercise of state power. Consequently, the fact that the board was authorized by a statute does *not* constitute a characteristic determinative of whether the board is a "state * * * board".

The second characteristic noted by the plaintiff and the Court of Appeals is that the director of the Department of State Police, or his deputy, is a member of every concealed weapon licensing board. Since the director is an official of a state department, the plaintiff and the Court of Appeals

concluded that such a characteristic demonstrates that the board is a "state * * * board". However, such an interpretation ignores the character of the other members of every concealed weapon licensing board. Just as every concealed weapon licensing board by law has one state official, every concealed weapon licensing board by law has two local officials. As the statute requires, the county sheriff (or his deputy) and the county prosecutor (or his deputy) are members of the board along with the director of the Department of State Police. The county prosecutor and the sheriff are clearly local officials elected locally and paid by the local government. Therefore, the fact that a single state official is a member of the board is not controlling in determining the status of the board as a "state * * * board". Indeed, the fact that a majority of the members of the board indicates that it is not a "state * * * board". This understanding is further bolstered by the fact that the board acts only by a vote of the majority. Therefore, the state official cannot control the board, but the local officials can, by voting together or not voting with the state official, control the actions of the board.

The third characteristic presented by the plaintiff and the Court of Appeals is that the statute authorizing concealed weapon licensing boards mandates that certain attributes must be possessed by all successful applicants for a concealed weapon license. From this fact, the plaintiff claimed, and the Court of Appeals found, "substantial state involvement". However, a closer review of the state-imposed requirements indicates that they are all very general in nature. For example, a successful applicant must be 18 years of age or older, a United States citizen, a resident of Michi-

gan for at least six months, and not a recent felon or insane. These very general requirements do not provide any substantial guidance to a concealed weapon board attempting to ascertain whether, as MCL 28.426(1); MSA 28.93(1) requires, "the applicant has good reason to fear injury to his or her person or property, or has other proper reasons, and is a suitable person to be licensed" since not everyone who is 18 years or older, a citizen of the United States, a resident of Michigan for at least 6 months, and not a recent felon or insane is entitled to a concealed weapon license. Each concealed weapon licensing board must determine "proper reason" and "suitability" based upon consideration of local needs and an exercise of its discretion. As the Court of Appeals recognized in *Bay County Concealed Weapons Licensing Board v Gasta,* 96 Mich App 784, 789-791; 293 NW2d 707 (1980), the Legislature intends the concealed weapon licensing boards to apply local and discretionary standards in deciding whether to grant an applicant a concealed weapon license:

"The licensing board is comprised of one representative each from the County Prosecutor's Office, the State Police, and the County Sheriff's Department. By creating a board composed of law enforcement officials and giving it the exclusive authority to issue, deny and revoke permits for concealed weapons, the Legislature has insured that an individual's perceived need to carry a concealed weapon will be evaluated in light of the experience and knowledge of community needs possessed by these local officials. The potential danger which a concealed weapon poses to the unsuspecting public justifies that licensing procedures be entrusted to a board comprised of law enforcement officials.

\* \* \*

"In view of the inherent potential danger which accompanies the issuance of a permit to carry a con-

cealed weapon, the licensing board as composed reflects the Legislature's intent that power to issue and revoke such [concealed weapon] licenses is properly placed with those professionals most able to assess community needs and problems in this area."

Therefore, rather than creating a "comprehensive scheme of state-imposed rules" as asserted by the plaintiff and the Court of Appeals, the conditions stated in the statute do no more than indicate the minimal qualifications which a person must possess to receive a concealed weapon license and which a local concealed weapon licensing board would probably require even absent an explicit statement in the concealed weapon licensing statute. They do not assist the concealed weapon licensing boards in determining who among those possessing the minimal qualifications stated in the state statute should receive a concealed weapon license due to necessity and suitability. That decision is left in the hands of the concealed weapon licensing board to be resolved according to its discretion. Therefore, the articulation in the statute of a few general minimal attributes to be possessed by all applicants does not constitute a "comprehensive scheme of state-imposed rules" requiring a finding that the board is a "state * * * board". Rather, the absence of more specific guidance than "proper reasons" and "suitable person" indicates that the board is not a "state * * * board".

The final characteristic raised by the plaintiff and the Court of Appeals is that the fingerprints of each applicant are taken on forms provided by the state police and are checked by the state police. From this characteristic, the plaintiff and the Court of Appeals found "substantial state involvement". However, rather than indicating that the

board possesses "state" status, the statutory provision that the state police check the fingerprints of each applicant manifests nothing more than the common sense of the Legislature since the state police are the central repository for fingerprint information collected throughout the state. Therefore, it is logical that they should be consulted to determine whether the applicant has a criminal record. This interpretation, that state police review of all applicants' fingerprints as a common-sense provision and not as an indication of the "state" status of the concealed weapon licensing boards, is further bolstered by the other "fingerprint provisions" of the concealed weapon licensing statute. For example, local law enforcement officials take the fingerprints in duplicate. One set is forwarded to the state police and the other is forwarded to the Federal Bureau of Investigation for comparison with fingerprints in the national repository of fingerprint records. Consequently, the point is to assure that an applicant is not able to obtain a concealed weapon license following criminal activity merely by moving across a county or a state line, rather than to indicate "state" status of the concealed weapon licensing boards through "substantial state involvement". Therefore, the fact that the state police check each applicant's fingerprints and provide the forms upon which the fingerprints are placed indicates nothing more than a rational system to assure a thorough review against state and national fingerprint records. It does not indicate that the board is a "state * * * board".

In addition to rejecting the plaintiff's asserted state-like characteristics, we note that the board also possesses several characteristics indicating that it is not a "state * * * board". For example,

the concealed weapon licensing boards have only limited local jurisdiction and can only grant a license to a person living within their jurisdiction. Therefore, while the concealed weapon license is honored throughout the state, the concealed weapon licensing boards' licensing authority is limited to a local jurisdiction. Obviously, this is not a characteristic indicative of a "state * * * board". Additionally, the 83 concealed weapon licensing boards are entirely independent of one another. As such, they are not delineated subunits in a state system divided locally for administrative convenience. Again, such complete independence from one's peer concealed weapon licensing boards is not a characteristic indicative of a "state * * * board". Finally, the fee paid by the concealed weapon license applicant is paid to the local county clerk, a local elected official. Thereafter, 80% of the fee is retained by the local unit of government and only 20% is forwarded to the state. As with the other characteristics described above, this is not indicative of a "state * * * board".

Therefore, the characteristics of the board, when considered in their totality, are not those of a "state * * * board". Rather than being indicative of a "state * * * board", the characteristics of the board provide strong evidence that the board is not a "state * * * board". Therefore, the first section of the analysis for determining whether the board is a "state * * * board" demonstrates that the board possesses many more non-state-like characteristics than it possesses state-like characteristics.

b

The second portion of the "state" status analysis

requires the Court to consider the relationship between the board and the state. Obviously, we also consider the relationship between the board and the local units of government as the other side of this inquiry.

As with the characteristics of the board, the plaintiff identifies several points of interaction between the board and the state from which the Court of Appeals found "substantial state involvement". As with the plaintiff's presentation of state-like characteristics, the Court of Appeals adopted the plaintiff's argument that there was a significant relationship between the board and the state.

The plaintiff first noted that the board is created by statute as indicative of a relationship between the board and the state. However, as demonstrated above in the characteristics analysis, the source of the authorization does not manifest any relationship between the state and the board since all boards ultimately are authorized through a grant of "state" power. The plaintiff's second asserted indication of a relationship between the board and the state is the board's utilization of the state police to provide fingerprint forms and to check applicants' fingerprints. Again, as indicated above in the characteristics analysis, we believe that this arrangement manifests only a common-sense approach to fingerprint checks. As such, it does not indicate a meaningful relationship between the board and the state. A third relationship identified by the plaintiff is the fact that the director of the Department of State Police sits as a member of the concealed weapon licensing boards. Unlike the first two claims, the presence of a state official on the board does indicate a relationship between the board and an agency of state government. However, the relationship is not as significant as

claimed by the plaintiff since the director of the Department of State Police does not sit solely as a representative of the state. Rather, as noted by the Court of Appeals in *Gasta, supra,* p 791, he is a member of the board because he is a law enforcement professional "able to assess community needs and problems in this area". Therefore, the presence of a state police official is not indicative of a meaningful relationship between the board and the state. Rather, it is indicative of the Legislature's intent to place concealed weapon licensing decisions in the hands of law enforcement professionals from both state and local government who would consider local factors. The plaintiff's final point allegedly demonstrating that there is a relationship between the board and the state is that the board is one of 83 concealed weapon licensing boards throughout the state. While this fact may be indicative of the "state" function served by the board, see below, it is not relevant to the relationship between the board and the state. Nothing in the fact that concealed weapon licensing boards are systematically established throughout the state shows any present relationship between the board and the state. Consequently, we do not find that the points made by the plaintiff show a material relationship between the board and the state.

Additionally, as in the relationship analysis, there are several relevant facts demonstrating the absence of a meaningful relationship between the board and the state. For example, there is no state agency or statewide authority responsible for monitoring the 83 concealed weapon licensing boards and no state agency or authority through which appeals must be taken, as with other state boards.[8]

---

[8] See, *e.g.,* Workers' Compensation Appeal Board, MCL 418.251 *et seq.;* MSA 17.237(251) *et seq.;* State Tenure Commission, MCL 38.121; MSA 15.2021, MCL 38.131; MSA 15.2031; Liquor Control Commission, MCL 436.20; MSA 18.991.

Second, with the exception of the licensing of gas-ejecting devices, there is no official mechanism promulgating rules binding upon all concealed weapon licensing boards. See MCL 28.426a; MSA 28.94. Third, two of the three concealed weapon licensing board members are not subject to control or appointment by the state. The county prosecutor and the county sheriff are locally elected officials performing constitutionally designated tasks. As such, they are not subject to direct control or replacement by the state. Fourth, the "clerk" of the concealed weapon licensing boards is the county clerk, another locally elected official. Finally, each member of the concealed weapon licensing boards is free to appoint a deputy to sit on the concealed weapon licensing board in his stead without clearing that decision with any state agency or authority. This is clearly consistent with local autonomy rather than a meaningful relationship with the state.

Therefore, the factors asserted by the plaintiff and the Court of Appeals to support their conclusion that there is a meaningful relationship between the board and the state is not supported by the facts they note. Moreover, several factors, not noted by either the plaintiff or the Court of Appeals, demonstrate the absence of a meaningful relationship between the board and the state, and indicate instead the presence of an overwhelming relationship between the board and local government. Therefore, the second portion of the analysis demonstrates that there is no meaningful relationship between the board and the state.

c

The final portion of the "state" status analysis requires that we consider the "function" of the

board to determine whether it functions as a "state * * * board".

The plaintiff asserts that the board functions as a cog in a comprehensive statewide system to regulate the licensing of concealed weapons. In support of these assertions, the plaintiff notes that the purpose section of the concealed weapon licensing statute states that it is "to regulate and license the selling, purchasing, possessing, and carrying of certain firearms and gas ejecting devices" throughout the state. While an individual concealed weapon licensing board may have only limited local jurisdiction, the concealed weapon licensing boards work together as a comprehensive network for the purpose of statewide control of concealed weapons.

There is no denying the fact that the concealed weapon licensing boards exist in every county in the state or that they exist to regulate concealed weapon licensing throughout the state. However, that does not amount to a "state" function. Rather, it is apparent that the Legislature has chosen to provide a uniform local mechanism for accomplishing its purpose. As the Court of Appeals noted in *Gasta, supra,* the concealed weapon licensing boards do not "function" as state boards. Rather, they "function" locally, with a majority of the concealed weapon licensing board members being local officials who exercise their discretion according to local considerations. Such are obviously not manifestations of a "state function". Therefore, this analysis does not demonstrate that the concealed weapon licensing boards perform a state "function".

d

Therefore, we conclude that the board is not a

"state * * * board" subject to the provisions of the APA. Its characteristics, its relationship to the state, and its function all indicate that it is not a "state * * * board". It is not, therefore, an "agency" subject to the provisions of the APA and cannot have violated the provisions of the APA. The Court of Appeals was in error in reversing the circuit court decision on those grounds.

2

Our conclusion that the board is not a "state * * * board", upon the basis of its characteristics, its relationship to the state, and its function, is supported by the legislative history of the concealed weapon licensing statute. That legislative history indicates that the Legislature did not intend the board to be subject to the requirements of the APA. If the Legislature did not intend the board to be subject to the provisions of the APA, it certainly did not intend to create an entity meeting the "agency" definition of the APA. The Legislature's intent is demonstrated by the following facts.

First, the concealed weapon licensing statute contains its own procedural requirements by which the concealed weapon licensing boards are to revoke a concealed weapon license. These procedures are clearly stated in MCL 28.428; MSA 28.96:

"The licensing board * * * may revoke any license issued by it upon receiving a certificate of any magistrate showing that such licensee has been convicted of violating any of the provisions of this act, or has been convicted of a felony. Such license may also be revoked whenever in the judgment of said board the reason for granting such license shall have ceased to exist, or whenever said board shall for any reasonable cause

determine said licensee to be an unfit person to carry a pistol concealed upon his person. No such license shall be revoked except upon written complaint and then only after a hearing by said board, of which at least 7 days' notice shall be given to the licensee either by personal service or by registered mail to his last known address. The clerk of said licensing board is hereby authorized to administer an oath to any person testifying before such board at any such hearing."

In stating the procedural requirements applicable to a concealed weapon licensing board's revocation of a concealed weapon license, the Legislature chose language and requirements which do not parallel the language and requirements of the APA. In part, this is due to the fact that the language of MCL 28.428; MSA 28.96 predates the APA. However, the concealed weapon licensing statute, which was enacted in 1927 (1927 PA 372), has not been amended regarding the procedure for revoking concealed weapon licenses during the past 57 years. It has remained unaltered despite the passage of two administrative procedures acts applicable to state agencies in 1952 and 1969 which contained different procedural requirements, despite substantial amendment of other sections of the concealed weapon licensing statute in 1929 and continuing as recently as 1982, and despite the increasingly broad scope of administrative procedural requirements. Therefore, it must be assumed that the Legislature's retention of explicit revocation procedures for concealed weapon licensing boards indicates that it does not consider the board to be subject to the provisions of the APA. If it is not subject to those provisions, it can only be because it is not a "state * * * board" within the meaning of the APA.

Second, after the passage of the concealed weapon licensing statute with its own internal

procedural requirements, the Legislature passed the APA in 1969. 1969 PA 306. The APA was made applicable to "state * * * boards", but the Legislature made no reference to the concealed weapon licensing boards, which were subject to a different set of procedural requirements under MCL 28.428; MSA 28.96. This is consistent and logical if the Legislature did not perceive any conflict between the APA and the concealed weapon licensing statute because the concealed weapon licensing boards were not seen as "state * * * boards" subject to the provisions of the APA. Any other interpretation would necessarily be based upon an assumption that the Legislature knowingly created an implicit conflict or that it was unaware of the concealed weapon licensing statute's revocation procedures. We see no reason to engage in such assumptions since the legislative action is adequately explained if the Legislature did not believe that the concealed weapon licensing boards were "state * * * board[s]" subject to the provisions of the APA.

Third, the Legislature twice amended the concealed weapon licensing statute in 1980. In the first amendment, 1980 PA 339, the Legislature required that the supervisor, commissioner, chief of police, or marshal approve each applicant. If such approval was not given, the supervisor, commissioner, chief of police, or marshal was required to give written notice to the applicant, and the concealed weapon licensing board was required to provide a hearing to review the refusal to approve the applicant. In requiring a hearing before the concealed weapon licensing board, the Legislature did not mention the APA or any of its provisions. However, in the second amendment, 1980 PA 345, the Legislature provided that the concealed

weapon licensing boards were to issue licenses for gas-ejecting devices according to rules promulgated by the director of the Department of State Police *pursuant to* the APA. Both amendments were passed on the same day and yet only one mentions the APA. The logical inference to be drawn from these two amendments is that the APA is not generally applicable to the concealed weapon licensing boards. As above, if the APA is not applicable to the concealed weapon licensing boards, it is because the Legislature does not consider them "state * * * boards".

Finally, it is noteworthy that the 83 concealed weapon licensing boards have been required to comply with the provisions of MCL 28.428; MSA 28.96 for the past half-century but have not been previously required to comply with the provisions of the APA. Yet, the Legislature has seen no need to correct the perception that the concealed weapon licensing boards were not subject to the provisions of the APA passed in 1952 or 1969. At a minimum, the Legislature appears to have acquiesced in this interpretation which holds the concealed weapon licensing boards are *not* state agencies.

Therefore, the legislative history of the concealed weapon licensing statute indicates that the Legislature does not intend that the concealed weapon licensing boards be subject to the provisions of the APA. This legislative history is consistent with the Court's conclusions that the board is not a "state * * * board" subject to the provisions of the APA.

## III

The judgment of the Court of Appeals is reversed, and the case is remanded to the Court of

Appeals for consideration of the plaintiff's remaining due process claims. We do not retain jurisdiction.

WILLIAMS, C.J., and KAVANAGH, LEVIN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with RYAN, J.