*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VINCENT EDWARD OVALLE,

        Defendant-Appellant.

UNPUBLISHED
March 10, 2020

No. 346175
Ingham Circuit Court
LC No. 17-000627-FC

Before: BORRELLO, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right from his jury-trial convictions for first-degree criminal sexual conduct (CSC-I), MCL 750.520b, torture, MCL 750.85, unlawful imprisonment, MCL 750.349b, and assault with intent to do great bodily harm less than murder (AIGBH), MCL 750.84. Defendant was sentenced as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 427 to 1,000 months for his torture conviction, 24 to 360 months for his unlawful-imprisonment conviction, and 24 to 240 months for his AIGBH conviction, and to a consecutive prison term of 427 to 1,000 months for his CSC-I conviction. We affirm defendant's convictions and sentences.

## I. BACKGROUND

Defendant's convictions result from a series of disturbing events that took place over three days. The victim in this case testified that, on the first day in question, she went to defendant's residence to buy a bag of marijuana from him, as she had done on previous occasions. Also present in the home were Serenity Stephenson, Natausha Anderson, and Dexter Benning. Stephenson's testimony at trial implied that the victim was supposed to pay defendant $10 for the bag of marijuana, but was short $5. The victim testified that she went to the basement with defendant and Stephenson and, at that point, was assaulted, hit in the back of her head, and beaten with a belt. The victim and Anderson testified that defendant then told the victim to strip off her clothes and lie face down on the floor. The victim testified that defendant, Stephenson, Benning, and Anderson then each took turns hitting her with a belt. Anderson testified that she had hid in the basement at defendant's direction before the victim came down so as to surprise the victim.

According to Anderson, she struck the victim with a cord instead of a belt and defendant joined her in hitting the victim with the cord.

Stephenson testified that defendant told the victim that nobody could leave the house until he received his money. According to Stephenson, defendant also stated that the victim should be put on a prostitution site, presumably to make the money he believed he was owed. Stephenson testified that the victim received a call that night in response to a prostitution ad for her. Stephenson stated that defendant instructed her to leave the house with the victim to ensure that she did not escape. The victim testified that she was forced to leave the house and perform a sexual act on somebody. Anderson indicated that she witnessed Stephenson and the victim leave in response to the call.

According to the victim, a second assault occurred after she hid a knife on her person to commit suicide if she was not released. The victim stated that she was ordered to strip down, that she complied, and that a pillow was placed over her face. The victim testified that Anderson and Stephenson then beat her with an electrical cord, punched her in the face with brass knuckles, and kicked her. Stephenson testified that defendant asked her to beat the victim with the cord to teach the victim a lesson. According to the victim and Anderson, this assault occurred on the first day of the victim's confinement; Stephenson testified that the assault occurred on the second day.

The victim testified that Benning also sexually assaulted her on the first day; Stephenson testified that Benning's sexual assault occurred on the second day. According to Anderson, Benning was upstairs with defendant while the victim was downstairs. Anderson testified that she overheard defendant tell Benning that he was selling the victim for "$20 tricks," and that Benning asked defendant if he could have some fun with the victim. According to Anderson, defendant responded, "I don't care," and obtained a broom and a beer bottle. Benning headed to the basement first and, according to Stephenson, when defendant came into the basement, Benning asked, "Oh, can I get in on the action?" Stephenson testified that defendant responded, "[G]o ahead," and told her to watch to make sure Benning did not help the victim. Benning then proceeded to penetrate the victim with the beer bottle and broom.

The victim eventually escaped on the third day of her confinement when a fifth person helped her escape by calling the victim's mother to pick her up.

The prosecution charged defendant with CSC-I, torture, unlawful imprisonment, and AIGBH. Although the prosecution acknowledged that Benning, not defendant, directly committed the sexual assault, the prosecution argued that defendant was guilty of CSC-I under an aiding and abetting theory. The prosecution offered defendant a plea deal which would have fixed his minimum prison sentence at 10 years, but defendant rejected the offer. Stephenson and Anderson pleaded guilty to single counts of AIGBH in exchange for their testimony at trial. Ultimately, the jury found defendant guilty of each charged count. This appeal followed the trial court's imposition of the aforementioned sentences.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE FOR CSC-I

Defendant first argues that the prosecution presented insufficient evidence of intent for the jury to find him guilty of aiding and abetting CSC-I. We review de novo challenges to the sufficiency of the evidence. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). In doing so, we review the evidence in the light most favorable to the prosecution, to determine whether a rational trier of fact could find that the prosecution proved each essential element of the crime beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). A trier of fact may consider circumstantial evidence and all reasonable inferences that evidence creates. *Solloway*, 316 Mich App at 180-181. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Flick*, 487 Mich 1, 24-25; 790 NW2d 295 (2010) (internal citation and quotation marks omitted).

A person is guilty of aiding and abetting a crime upon proof beyond a reasonable doubt that "(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *People v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995); see also *People v Mass*, 464 Mich 615, 628; 628 NW2d 540 (2001) (clarifying that *Turner* does not require proof of a higher level of intent by the aider than the principal). A person who aids or abets a crime may be prosecuted as if he directly committed the offense. MCL 767.39.

Defendant does not argue that Benning did not commit CSC-I. Similarly, defendant does not contest that his provision of the beer bottle and broom satisfied the second *Turner* element: acts that assisted the crime. Rather, defendant argues only that the prosecution did not show that he had the requisite intent to aid Benning's commission of CSC-1. We disagree.

Anderson testified that defendant told Benning that he was selling the victim for "$20 tricks." Anderson believed that she heard Benning ask if he could "have fun" with the victim to which defendant responded, "I don't care." Stephenson also saw defendant bring a broom and bottle down to the basement. Stephenson testified that defendant ordered her to observe Benning in the basement and make sure that he did not try and help the victim escape. According to Stephenson, she heard Benning ask defendant if he could "get in on the action," and defendant respond by saying, "[G]o ahead." The record indicates that the sexual assault occurred after a serious beating was administered to the victim and while she was still naked and bloodied. The jury heard testimony that defendant wanted the victim to set up a page on a prostitution website and that she was forced to leave the house to perform a sex act at one point in her confinement.

Where the defendant orders the beating and imprisonment of a victim, holds her out for prostitution, provides the implements used to assault the victim, and orders another to watch the assailant to ensure that the victim remains confined, this Court would be hard-pressed to find more damning evidence of intent. Defendant's argument is wholly without merit.

## B. CONSECUTIVE SENTENCES

Next, defendant argues that the trial court abused its discretion by ordering that defendant's sentence for CSC-I be served consecutive to his sentence for torture. We review the trial court's discretionary decision to impose consecutive sentences for abuse of discretion. *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016). An abuse of discretion occurs when the trial court chooses an outcome falling outside this principled range of outcomes. *Id.*

MCL 750.520b(3) grants the trial court discretion to "order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." Defendant argues that the trial court abused its discretion by imposing consecutive sentences because his CSC-I and torture convictions did not arise from the same transaction. Although the phrase "same transaction" is not defined by the statute, "it has developed a unique legal meaning." *People v Ryan*, 295 Mich App 388, 402; 819 NW2d 55 (2012). Generally, this Court has defined "same transaction" to indicate two offenses within a "continuous time sequence," such as offenses with "a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *Id.* at 402-403 (internal citations, quotation marks, and block notation omitted).

Despite defendant's argument, the offenses here are clearly more than incidentally connected. Defendant ordered the beating, torture, confinement, and forced prostitution of the victim. Having become aware that defendant was holding the victim against her will and offering her up for forced prostitution, Benning asked defendant if he could "get in on the action." Defendant provided Benning with a beer bottle and broom and Benning assaulted the victim. Although defendant claims that the assault happened on the second day of the victim's confinement, the victim indicated that the assault happened on the first day of the confinement. In any event, one of defendant's accomplices testified that the sexual assault occurred right after the beating with the brass knuckles and that the victim was still naked and bloody from the earlier beating.[1] Moreover, the victim's captors stood guard over her during the assault to ensure that she did not escape. Plainly, but for the torture and confinement of the victim, she would not have been in a position to be sexually assaulted by Benning. The latter is a direct product of the former. Defendant's argument to the contrary is, again, wholly meritless.

## C. PROPORTIONALITY OF THE SENTENCE

Defendant next argues that his sentences were disproportionate to the seriousness of his offense and offense history. If a sentence falls outside of the Legislature's recommended sentencing-guidelines range, we will review that sentence for reasonableness, utilizing an abuse of discretion standard. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). When a sentence falls within the guidelines range, however, we must affirm the trial court's sentence

---

[1] Given the proximity between the beating and the sexual assault, we find that it is irrelevant whether the assault occurred on the first or second days of the victim's confinement. The record testimony indicated that the second beating and the sexual assault occurred on the same day; the witnesses' testimony merely differed on whether both events took place on the first or second days.

"unless there was an error in scoring or the trial court relied on inaccurate information" when sentencing. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173, 181 (2016); MCL 769.34(10). In this case, each of defendant's individual sentences falls within the recommended range. Defendant appears to argue on appeal that, although his individual sentences fell within the guidelines ranges, his sentence was rendered disproportionate by the trial court's imposition of a consecutive sentence, which resulted in a total length of incarceration which was twice the upper range for his most-serious crimes. A proportionality challenge, however, "must be based on the individual term imposed and not on the cumulative effect of multiple sentences." *Norfleet*, 317 Mich App at 663. Therefore, because none of defendant's sentences fall outside of the recommended sentencing-guidelines range and defendant does not challenge the information underlying his sentences, we must affirm each sentence.

Recognizing this impediment to his appeal, defendant argues that MCL 769.34(10)'s prohibition on addressing within-guidelines sentences is unconstitutional. While we may be disposed to entertain defendant's argument, we decline to do so for two reasons. First, this case is not an appropriate vehicle to address the constitutionality of MCL 769.34(10). Even were we to address defendant's proportionality argument, we would find no error. Simply put, defendant's approximately 71-year minimum sentence is well-within the range of principled outcomes for a defendant who directed the imprisonment, torture, and forced prostitution of a woman and whose actions led to at least one brutal sexual assault on that victim. Under these circumstances, the trial would be hard-pressed to fashion a sentence we would find disproportionate.

Second, and more importantly, our Supreme Court has already precluded our review of this issue. In *People v Garza*, 469 Mich 431, 433-435; 670 NW2d 662 (2003), our Supreme Court declined to hold MCL 769.34(10) unconstitutional. More recently, in *Schrauben*, 314 Mich App at 196 n 1, this Court concluded that, although our Supreme Court in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015) recognized that the then-mandatory sentencing guidelines were unconstitutional, it's remedy "did not alter or diminish MCL 769.34(10)." Our Supreme Court was given an opportunity to review MCL 769.34(10) by granting the leave application in *People v Ames*, unpublished opinion of the Court of Appeals issued August 10, 2017 (Docket No. 333239). Our Supreme Court's decision to decline leave to appeal in that case leaves little doubt that *Garza* and *Schrauben* remain valid. *People v Ames*, 504 Mich 899; 929 NW2d 283 (2019). Although we may have our own concerns regarding MCL 769.34(10), our Supreme Court has left us with no choice but to decline defendant's invitation to hold the statute unconstitutional.

## D. JUDICIAL BIAS

Finally, defendant argues that the trial judge was required to disqualify himself from hearing this case for bias. We review unpreserved issues of judicial bias for plain error affecting the defendant's substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Judicial disqualification is permitted under MCR 2.003(C)(1)(a) when a "judge is biased or prejudiced for or against a party or attorney." Judicial disqualification without a showing of actual bias is permitted when there is good reason to believe that the probability of actual bias is significant enough to be a constitutional issue. *Crampton v Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975). The four situations highlighted in *Crampton* were (1) when a judge has a financial interest in the case, (2) when the judge has been the target of personal abuse from the

party, (3) when the judge is involved in other matters with a party, and (4) when the judge might have a predetermined opinion because of prior participation in the case. *Id.*

Defendant argues that "two curious factors" suggest that the trial judge was biased against him. First, defendant argues that he failed to appear in the trial judge's court on an unrelated case and, as a result, a probation violation was still pending against him. We fail to see how defendant's actions or lack thereof in an unrelated probation matter create a concern that the trial judge was biased against him in this criminal case. See *People v White*, 411 Mich 366, 386; 308 NW2d 128 (1981) (concluding that the court rules do not require disqualification merely because a trial judge was involved in a prior proceeding with a party). If there is a connection, defendant has failed to identify it. See *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009).

Second, defendant argues that the trial judge's bias was shown at a preliminary hearing when the trial court "declared the sentencing die was cast." Having reviewed the record of this hearing, we are unable to conclude that the trial court made this declaration. At the challenged hearing, defendant rejected a plea offer which would have fixed his minimum prison sentence at 10 years. The trial judge informed defendant that, if he were tried and convicted of the charges, his minimum prison sentence would likely be somewhere in the range of 314 months. Plainly, the trial judge's remarks were intended to express the generosity of the plea deal, such that defendant could make an informed decision whether he wanted to accept the plea or go to trial.

There is no evidence in the record which would suggest that the trial judge prejudged the defendant's guilt or predetermined his sentence. In fact, the record indicates just the opposite. After sitting through the trial and hearing the evidence of defendant's depravity on the days in question, the trial judge decided to sentence defendant at the upper limit of the recommended guidelines to consecutive minimum sentences of 472 months, among other sentences. This is not the type of evidence that supports prejudgment; rather, the record tends to show that the trial court endeavored to ensure that defendant was making an informed plea and, after defendant was convicted by a jury, thoughtfully considered the evidence at trial when rendering a sentence. Defendant's claim of judicial bias is without merit.

Affirmed.

/s/ Stephen L. Borrello
/s/ Patrick M. Meter
/s/ Michael J. Riordan